# Daughdrill v. Helms, Administrator.

*Bill in Equity to enforce Vendors' Lien.*

1. *Demurrer; when presumed to have been waived.*—Where a cause is submitted "for final decree on pleadings and proof," and the parties proceed to trial without any mention being made of a demurrer incorporated in the answer, or any decree upon it—it will presumed that the demurrer was waived.

2 *Same; when defect assailed by, cured.*—If a bill be demurrable for want of necessary parties defendant, and the defendant does not demur but shows in his answer that he is the only necessary or proper party defendant, the court below will not regard the defect, which is merely formal, and the appellate court will regard the bill as amended in that particular.

3. *Contract solvable in Confederate currency; measure of recovery since the war.*—On the 9th of February 1863, the purchaser, in part payment of lands, executed two notes payable on their face in dollars, but solvable in Confederate currency. These notes aggregating $1,500, matured December 25th 1863. On February 9th, 1865, the purchaser sent to the administrator of the vendor, who had died in the meantime, $1,100 in Confederate currency to be applied on payment of these notes. He alleged that he declined to receive it as a payment on the notes, but endorsed on the back of one of them, that he had received the amount in Confederate currency, as he said, merely as a memorandum that he had that much of the purchasers money, but made no effort to notify the purchaser of this, or to return his money.

[Daughdrill v. Helms.]

In 1870 the administrator, *de bonis non*, filed a bill to subject the lands for the payment of the notes, and repudiating the payment credited on the note.

*Held*:—Under the facts, it is equitable that the purchaser should be charged with the value, in present currency of the United States, of the notes when they matured, December 25th, 1863, and interest thereon until February 9th, 1865, and should be credited for the payment made in Confederate currency on February 9th 1865, to the amount of its then value, in the present currency of the United States—and the balance thus struck with interest thereon from February 9th 1865, to the date of the decree, is the amount with which the purchaser is properly chargeable.

APPEAL from Chancery Court of Cherokee.

Heard before Hon. B. B. McCRAW.

The appellee Helms, as administrator *de bonis non* of the estate of John Howard deceased, filed this bill on the 24th of August 1870, against the appellant, J. H. Daughdrill, to subject to the payment of the purchase money, certain lands which Daughdrill had purchased from his intestate.

The bill alleges that the lands were sold to Daughdrill and Crigler, about the 9th day of February 1863, for the sum of five thousand and five hundred dollars, and to secure a part of the price Daughdrill and Crigler executed two promissory notes, both reciting that they were given for land, dated February 9th 1863, and payable on the 23rd day of December following ; one for $1,000 and the other for $500; that on that day of the execution of the notes Daughdrill took a conveyance of the lands to himself alone ; that on the 10th day of February 1865, Martin Hale the administrator in chief endorsed on the note for $1,000, that he had "received on it, eleven hundred dollars in Confederate money ; " that this credit was without authority, and did not amount to a payment ; that both notes were due ; that Crigler's residence was unknown, and since the execution of the notes he had been adjudged a bankrupt, wherefore he was not made a party.

Daughdrill alone was made defendant, and an account prayed of what was due ; that the same be decreed a lien on the lands, and that they be sold for its payment, &c.

Daughdrill, answered, admitting the purchase and conveyance, but insisted that the price agreed on was five thousand dollars, payable in Confederate currency. He further alleged that four thousand dollars of the purchase was paid in Confederate currency at the time, and that he executed the note for a thousand dollars for the remainder. He made the purchase for himself, but by authority of Crigler, who was his partner in some other matters, he signed the name of Crigler to the notes, as security. The note for $500, Daughdrill asserts was given for cattle and provisions purchased

[Daughdrill *v.* Helms.]

from said Howard, and was a separate and distinct matter from the purchase of the land, and that the recital in the note that it was given for "value received in lands," was put in by mistake, by a third person who wrote out the notes.  He asserts the validity of the payment in Confederate currency to Howard's administrator, and offers to pay in lawful money the amount due upon the $500 note given for the cattle and provisions.  The answer alleges that the lands at the time of the purchase were worth from ten to twelve hundred dollars in lawful money, and that it was expressly understood and agreed that the notes were to be discharged by a payment in Confederate currency.

Incorporated in the answer was a demurrer for want of equity ; for want of a foot note, and because complainant had a plain and adequate remedy at law.

No notice appears to have been taken of this demurrer, and the record shows that the "cause was submitted for final decree on pleadings and proof," set out in the note of testimony.

Several witnesses were examined, and the evidence established that the price agreed on was fifty-five hundred dollars, to be discharged by payment in Confederate currency, and the preponderance of the evidence went to show that both the notes were given for the purchase-money, and not for the cattle and provisions bought of Howard as alleged in the answer.

Hale, the administrator to whom the payment in Confederate money was made, testified that he made the endorsement on the note as a memorandum merely that he had that amount of Daughdrill's money, and not as a credit ; that the money was brought to him by his son, who insisted upon his taking it as he was going away, and "as the times were squally" he made the memorandum on the note for the purposes stated.  There is no evidence that Daughdrill was ever informed by the administrator, that he did not receive the Confederate money as a credit on the notes ; although it is inferrible from the testimony that they resided for some length of time afterwards in the same neighborhood.

The chancellor decreed that complainant was entitled to the relief prayed, ordered a reference to the register to ascertain what the lands were worth in lawful money at the time of the sale ; what amount of Confederate money was agreed to be paid for them, and what amount had been actually paid in such currency.

The register was directed to ascertain the sum due, by stating the account as follows :—"As the sum of currency
Vol. liii.

actually paid is to the sum agreed to be paid, so is the sum to which defendant is entitled as a credit, to the full amount of lawful money, which respondent should pay for the land."

The register reported that the amount agreed to be paid was $5,500 in Confederate currency, the amount in that currency actually paid was $4,000; that the value of the land at the time of the sale was $2,000 in lawful money, and upon stating the account, as directed in the decree of reference, the respondent owed on the purchase-money, $545.46 with interest from the date of sale, amounting to $389.82, &c.

The chancellor overruled objections to the register's report, confirmed it, and decreed a sale of the lands, &c.

It is now assigned as error that Daughdrill was not allowed a credit for the Confederate money paid Howard's administrator; that Crigler was not made defendant; that the demurrer to the bill was not sustained, and that the final decree was erroneous.

RICE, CHILTON & JONES, for appellant.

J. B. WALDEN, contra.

MANNING, J.—The demurrer of defendant in this cause was filed with his answer; and the attention of the court appears not to have been directed to it. No judgment is thereupon rendered. The submission entry recites: "This day came the parties by their solicitors, and this cause is submitted for final decree on the pleadings and proof." Then follows a note of the evidence offered on behalf of each party. As nothing was said about the demurrer, and the parties proceeded to a trial, we must consider that the demurrer was waived by defendant. *Chapman* v. *Hamilton*, 19 Ala., 121.

No objection was taken by demurrer, or in any other manner, so far as the record shows, to the omission to make Crigler a party defendant. And if there had been any such objection, after the answer of defendant Daughdrill was filed, it was evident that the latter was the only proper party to be sued,—for he admits, what the bill charges, that the conveyance of the land was made by Howard to him alone, and then affirms that he was the sole purchaser of it; that Crigler's name was signed with his to the note, only because they were in some other matters, in partnership, with each other; but that Crigler had no interest in the land. There-

5

[Daughdrill *v.* Helms.]

fore, if necessary, the bill should have been amended, and it would be proper for us to consider it amended, so that the portion which alleges that Crigler was a joint purchaser of the land with Daughdrill be stricken out. The assignment of error, that Crigler, or his assignee in bankruptcy, should have been, and was not made a party defendant, is therefore not well made. *Chapman* v. *Hamilton, supra; McMaken* v. *McMaken,* 18 Ala., 576.

The evidence preponderates in favor of complainant's allegations that the two notes set forth in the pleadings, were both given for part of the price of the land. The chancellor, therefore, did not err in charging it with a lien in favor of the vendor's administrator for the payment of them.

But the evidence conclusively proves that the sale of the land, during the war, was made for Confederate currency ; that a large partial payment of the price was then made in that currency, and that the notes then given for $1,000 and $500, respectively, with interest from their date, February 9th 1863, payable on the 25th of December 1863, were according to the understanding of the parties, although not so expressed in the notes, to be discharged, with Confederate currency.

The evidence shows, also, that defendant Daughdrill, sent to the administrator of Howard, Martin Hale, by a son of the latter, on the 10th of February 1865, $1,100 of Confederate Treasury notes, to be applied toward payment of his said notes to Howard ; for which Hale made an endorsement on the $1,000 note as follows :—"Received on the within note eleven hundred dollars in Confederate money by the hands of Lewis F. Hale, this 10th February 1865,"—without signing it.

At this date (as we know) Confederate treasury notes were so depreciated as to be of very little value ; the note on which the endorsement was made, was not expressly made payable in them ; and Martin Hale, whose deposition was taken, testifies that he did not receive the $1,100 of Confederate treasury notes, as a payment on Daughdrill's note ; that he refused to do so ; but that Lewis F. Hale urged him to take them from him, and said he was going away ; and that he therefore, received them from said Lewis, (who was his son,) and made the endorsement on the note of Daughdrill, only as a memorandum of the fact that he had received of Lewis F. Hale, that amount of Confederate notes that belonged to Daughdrill.

If Hale took them only for the reason mentioned, and made the indorsement merely as such a memorandum, he

[McLendon *v.* Darden.]

ought to have taken an early opportunity to inform the defendant of this, and to return the paper to him. He does not testify that he made any endeavor to do either. We think that Daughdrill ought, therefore, to be credited with the value of these notes at the time Hale received them. It was Daughdrill's duty to pay his notes when they became due, December 25th 1863 ; and if instead of doing so then, he waited until Confederate currency became almost valueless, a court of equity may very well, under the circumstances of this case, require that the loss by depreciation, fall upon him.

Since it was his right, however, to pay with Confederate currency, his notes when they matured, December 25th, 1863, the register ought to have been instructed to ascertain and report what was then the value in the present currency of the United States of $1,500 in Confederate treasury notes with interest to that day from February 9th, 1863, and to deduct from the amount of that sum and interest thereon from December 25th, 1863, to February 10th, 1865, the value in the present currency of the United States of $1,100 of Confederate treasury notes, and charge the defendant with the balance and interest thereon, from February 10th, 1865, to the date of the report ; for the payment of which the land is chargeable with the vendor's lien.

The order overruling the exceptions to the master's report, and so much of the prior decree as contains the instructions to the register as master, in this cause, are reversed, and the cause remanded to be proceeded in as hereinbefore indicated.