## BILLING et al. v. GILMER.

### (Circuit Court of Appeals, Fifth Circuit. June 5, 1894.)

#### No. 188.

RES JUDICATA—DECISION ON MERITS—AFFIRMANCE ON APPEAL.

Complainant brought suit in a state court in 1884 to redeem certain corporate stock, alleging a pledge thereof to defendant in 1871. The answer incorporated several demurrers, among them, that the demand was stale, and was barred by the statute of limitations, and alleged that defendant held the stock adversely after a transfer thereof to him in 1875. A material question in controversy was whether there was a continuing pledge of the stock at the time of such transfer and subse-

quently. On these pleadings, and testimony taken on the issues made by them, a final decree was made without a ruling on the demurrers, dismissing the bill, which was affirmed on appeal by the state supreme court. *Held*, that the decree was a bar to a similar suit thereafter brought in a federal court; and a contention that it was rendered on the demurrers, and was not a decision on the merits, could not be sustained, as the affirmance was necessarily on the merits, demurrers being waived on appeal, under the law of the state, where no ruling thereon was shown by the record.

Appeal from the Circuit Court of the United States for the Middle District of Alabama.

This was an application by James N. Gilmer, appellee, for a rehearing, after a decision reversing the decree appealed from (60 Fed. 332).

Thomas J. Semmes, H. C. Tompkins, and Alex. C. Troy, for appellants.

W. A. Gunter, E. H. Farrar, E. B. Kruttschnitt, and B. F. Jonas, and, on petition for rehearing, also J. D. Rouse and Wm. Grant, for appellee.

Before McCORMICK, Circuit Judge, and LOCKE and TOULMIN, District Judges.

TOULMIN, District Judge. Appellee, James N. Gilmer, in his amended bill filed in the state court avers in substance that the stock in question was transferred to Morris about the 30th of March, 1871, as security for the repayment of the purchase price thereof, which had been paid by Morris, and also as a basis of credit with Morris for money due him and to become due to him from time to time by Gilmer; that part of the purchase money had been paid to Morris, but that a balance was due on account of it; and also that he (Gilmer) was liable to Morris for other small sums of money, and that "said stock in the hands of Morris became and was a basis of a credit for money;" that he did not know what amount of money was due Morris, but that he was willing to pay, and admitted and offered to pay to him, whatever sum of money might be found due to him or to Josiah Morris & Co. for which the stock was held as security. The prayer was for a decree requiring Morris to transfer the stock to Gilmer, and to account for the dividends received since the transfer of the stock to him. Morris' answer to the amended bill denies that the complainant, Gilmer, was ever the owner of the stock, or that there was ever any agreement that it should become his property; that one F. M. Gilmer, the father of the complainant, subscribed for it, and had the certificate issued in the name of the complainant; that he (Morris) agreed with F. M. Gilmer to pay for the stock, and did pay for it, for the benefit of said F. M. Gilmer, who was at the time in an embarrassed pecuniary condition; that the certificate for the stock was not issued until November, 1871, and that immediately thereafter it was transferred to Morris, to be held by him for the repayment of the cost of the stock, and for the payment of a large indebtedness due him by said F. M. Gilmer; that this transaction was with said F. M. Gilmer, and the

complainant had nothing to do with it further than to make the transfer in accordance with the agreement between F. M. Gilmer and Morris. The answer avers that, if it were true that the complainant became or ever was the owner of the stock, as claimed, he, on the 30th day of March, 1875, caused and procured the certificate of stock, which had been issued in his name, to be surrendered to the company, and a new certificate to be issued in Morris' own name, and the stock transferred on the books of the company to his name. Morris denies that the issuance of the new certificate was done with the intent and for the purpose alleged in the bill, and he avers that the complainant had never set up any claim or right to the stock, or made any demand for its reconveyance to him, until the filing of the bill, which was on the 7th day of July, 1884. The answer, in effect, avers that Morris has had the title and possession of said stock, and has held the same adversely to complainant from March 30, 1875, and that in April, 1881, he sold it, as he had a right to do. There are incorporated in the answer several demurrers to the bill; among them, that the demand is stale, and that it is barred by the statute of limitations. On the issues thus made by the bill and answer testimony was taken by the respective parties. The cause was submitted for decree on the pleadings and testimony. The chancellor decreed that the complainant was not entitled to relief, and dismissed the bill without qualification. From this decree the complainant appealed to the supreme court of the state, and the decree of the chancellor was affirmed.

In our former opinion in this case (60 Fed. 332) the writer of the opinion inadvertently made a statement which did not clearly express what we meant to say. We there said that the particular cause of action or controversy in the former suit was ownership of certain stock, and a pledge of it in 1871, and a continuing pledge of it in 1875 and subsequent to that time. What we intended and should have said was that the particular cause of action in the former suit, as shown by the bill, was the ownership of certain stock, and a pledge of it in 1871, but a material question in controversy in that suit was whether there was a continuing pledge of it in 1875, and subsequent to that time. This question arose on the averments in the bill and in the answer, and was, in our opinion, a material one. In the bill it was alleged that "the said stock in the hands of said Morris became and was a basis of credit of money." It seems to us that this allegation was broad enough to cover daily transactions of recognition from the transfer in 1871 to the filing of the bill in 1884. In his answer, Morris denied that the stock was in his hands for any such purpose after the transfer in March, 1875. If Morris, on the 30th day of March, 1875, acquired the title and the possession of the stock, and held the same adversely to the complainant from that time until the filing of the bill, in July, 1884, then the complainant was not entitled to recover. The possession of the stock by Morris was permissive and subordinate in its inception, and, if it so continued, as alleged in the bill and claimed, the complainant was entitled to relief; but if that relation was dissolved by the act of the parties, or by the presumption founded on

the lapse of time, he was not entitled to relief. These issues were presented on the pleadings and testimony in the former suit. The statute of limitations runs only when the possession is adverse. Whether Morris' possession was adverse to the complainant was a question of fact. The transfer of the stock on the books, and the issuance of the certificate to him in March, 1875, was prima facie evidence of an absolute right and title in him. If liable to be rebutted or qualified by circumstances showing the purpose of the transfer, and a different holding by him, these circumstances must be shown. These were questions of fact arising on the pleadings and proof, and necessarily issues in the former suit. The same may be said as to the defense of staleness of the demand. Whether staleness of the demand is a defense must be determined by the varying facts of each particular case. Whether the complainant's demand was subject to this defense depended upon the facts and equities of the case. "Each case must necessarily depend upon its own circumstances, having regard not alone to the mere question of time, but also to the circumstances and relative situation of the parties, the nature of the property pledged, whether stationary or fluctuating in value, and other facts effecting the justness or equity of the right asserted." Gilmer v. Morris, 80 Ala. 78–83. How could the circumstances of the particular case be ascertained except from the proof? See Gilmer v. Morris, supra. In our former opinion we said that there was no demurrer to the bill in the state court for want of equity. What we meant to say was, there was no demurrer to the bill for want of equity, on the ground that there was no averment of recognition of a trust relation between the parties subsequent to March 30, 1875. This statement was induced by the argument of appellee's counsel, wherein it was contended that the supreme court of Alabama had decided the case before it on the demurrer to the bill that such recognition was not averred. We suggested that the counsel was mistaken. The supreme court made no such decision. We understood appellee's counsel in their argument before the court to concede that, if the state court did not decide the former suit on the demurrers to the bill, the plea of res adjudicata was well made, and appellants were entitled to a reversal in this case. The contention was that the decision of that court was on the demurrers, and that, therefore, said plea could not prevail, and the decree in this case should be affirmed. The demurrers do not appear by the record to have been ruled upon by the chancellor. He made no ruling or decision on them. The supreme court of Alabama affirmed the decree. That court has repeatedly decided that a demurrer will be presumed, on appeal, to have been waived, if the record does not show a ruling thereon. Corbitt v. Carroll, 50 Ala. 315; Daughdrill v. Helms, 53 Ala. 62; Harper v. Campbell (Ala.) 14 South. 650. In the last case cited there was a demurrer interposed to a bill, assigning, among other causes, the statute of frauds. The court said: "The chancellor made no ruling or decision on the demurrer, so far as appears from the record. In such case the presumption on appeal is that the demurrer was waived;" citing Corbitt v. Carroll and Daughdrill v.

Helms, supra. If the demurrers were presumed by the supreme court to have been waived, and that court affirmed the decree of the chancellor, it necessarily follows that it was affirmed on the merits of the case, and not on the decree sustaining the demurrers. The rulings of the chancellor and of the state supreme court were on the testimony, and, governed by that alone, they reached the conclusion that the complainant was not entitled to relief. See opinion of Stone, C. J., in Gilmer v. Morris, 80 Ala. 88. After careful consideration of this application and of the elaborate printed argument submitted in support of it, we are satisfied of the correctness of the conclusion reached by us and announced in our former opinion in this case. Rehearing refused.