Hillsborough,
Jan. 3, 1922.

ELIZABETH A. ROBERTSON v. FRED B. MONROE & a.

In an action against selectmen for negligently making and leaving an approach
to a highway in a condition dangerous to travelers, the test is whether there
was a probability that travelers would be misled by the indications on the
abutting land and in attempting to cross would be injured, and not whether
the abutter's rights had been invaded by changing his means of approach,
or whether the town would be liable to travelers or to the abutter, or whether
the abutter was negligent.

The liability of selectmen in such case does not terminate with their tenure of
office; the question of proximate cause is one of fact. And in the event of their
reëlection to office and negligent failure to give adequate warning of such dan-
gerous approach, a traveler injured thereby may recover for their original
negligence or their subsequent failure to warn.

Advice concerning the repair of highways, furnished to selectmen under Laws
1905, c. 35, s. 6 by a division engineer is not an order to the selectmen or to
the town and does not relieve them from the duty of exercising their own
judgment.

On the question whether selectmen acted with reasonable care in making an
approach to a highway, evidence that they acted on the advice of a state
engineer is material.

The failure of a party to offer, on the first trial of a case, a defence upon
which he relies at the second trial is legitimate matter for argument.

Whether a closing argument is so unexpected, fallacious and over-persuasive
that the opposing side ought to have an opportunity to reply is a question
for the trial justice.

Whether counsel has used a proper argument is immaterial if he has merely
contradicted his opponent's statement of a proposition of law immaterial
to the issue as submitted to the jury.

The misrecollection and honest misstatement of evidence by counsel presents
no question of fact as to the fairness of the trial when the error is incon-
sequential.

Admissions made by counsel in argument can be taken advantage of in the
trial wherein they are made, or in a subsequent proceeding.

The opinions as furnished by the court to the state reporter under P. S., c. 214,
s. 2; Laws 1901, c. 78, s. 16, and not the opinions as filed with the clerk under
Laws 1901, c. 78, s. 4 at the time an order is made, are the final and authorita-
tive record of the decision.

Questions once decided by the supreme court are not ordinarily reëxamined in
the same case upon a subsequent transfer.

CASE, for negligence. Trial by jury and verdict for the plaintiff.
This is the same action heretofore reported (79 N. H. 336) and the
essential facts as to liability appeared as at the first trial. Evidence
of what was done by the defendants in the fall of 1913 was excepted

to by the defendants, upon the ground that when or how the condition that existed at the time of the accident was created was immaterial. There were also exceptions to the refusal to give requested instructions to the jury, and to the closing argument for the plaintiff. These are stated in the opinion. Transferred from the January term, 1921, of the superior court by *Branch*, J.

*Robert W. Upton* (by brief and orally), for the plaintiff.

*Taggart, Tuttle, Wyman & Starr* (*Mr. Wyman* orally), for the defendants.

PEASLEE, J. The defendants' exception to the refusal to limit the use of evidence as to how the situation complained of was created in 1913, presents the same question that is involved in one of their requests for instructions to the jury, and is considered in connection therewith.

The requests now relied upon are summarized by counsel as follows:

That the selectmen could not be found liable for not providing an approach which the town for which they were acting was not obliged to provide;

That the doing of the work as such was distinct from the condition at the time of the injury;

That as the permanent repair of a highway must by statute be made under the advice of the state engineer the defendants are not liable if they follow the engineer's advice;

That if under the advice of the state engineer the changing of the grade destroyed the approach, neither the town nor the selectmen who did the work were liable.

As far as the first request was applicable to the case, it was included in the instructions given to the jury. They were specifically instructed that the plaintiff could not recover upon any theory that the abutter's rights had been invaded by removing or failing to restore his means of approach. The only theory upon which a verdict of fault upon the defendants' part in relation to what was done in the fall of 1913 could be found under the charge was, that in cutting across the driveway, either as a temporary or as a permanent change, they negligently created and left a situation likely to prove dangerous to travelers. The jury were told in terms that, if the defendants were free from fault in leaving the highway in the condition they did,

the plaintiff could not recover. And fault in this connection was fully explained as meaning negligent conduct creating a dangerous situation. The charge assumes throughout that, as far as this plaintiff is concerned, the selectmen had a perfect right to cut off the approach in a reasonable and prudent manner.

Liability or non-liability of the town for the accident is not a test by which to determine the accountability of these defendants. Neither is the alleged rule of law that the town was not under obligation to the abutter material. Injecting these matters into the consideration of the question of liability in this suit would only tend to confuse the jury. The complaint is not for failing to provide an approach, but for leaving what might appear to be an approach in a dangerous condition. The question for the jury was whether there was "a probability that persons having knowledge of the former existence of the driveway or misled by the indications on the abutting land would attempt to cross at this point from the adjoining land to the traveled path." *Robertson* v. *Monroe,* 79 N. H. 336, 343. The case was properly submitted to the jury on this theory.

The next request which is now relied upon, together with the exception to the use of certain evidence, presents the question whether selectmen who negligently create a dangerous situation in a highway are liable under Laws 1893, chapter 59, section 1, for injuries to a traveler which are suffered after the selectmen go out of office. Proof that a third party negligently failed to perform a common-law duty to the plaintiff to avert the probable results flowing from the defendants' negligence in creating a dangerous situation, is not an answer to this suit. "It is suggested the adjoining landowner was in fault in not closing or obliterating the driveway or in neglecting to warn the plaintiff. Assuming this to be so, his negligence would not prevent a recovery against others whose negligence was cause for the injury." *Robertson* v. *Monroe, supra,* 343.

The foregoing statement relates to the neglect of the abutter to care for the safety of those upon his premises. As to neglect to care for the highway, no acts of third parties are here involved. The question whether the intervening negligence of a third party in that respect would be such a break in the chain of causation that the negligent making the ditch could no longer be treated as a legal cause of the accident does not and cannot arise upon the facts as to this aspect of the case. If there was intervening negligence in not guarding or filling the ditch, it was that of these defendants, and the verdict against them then properly stands upon that ground. If

they are liable for this later negligence, it is immaterial whether they are or are not also liable for negligently creating a dangerous situation. If, on the other hand, they were not guilty of any actionable neglect of highway maintenance after the situation was created, then no one was, and the only fault is the original one of digging the ditch. Whatever view is taken of the facts, it remains true that there was no intervening negligence in the care of the highway which could relieve these defendants of a liability they would be under in the absence of such a fault later than their own.

Upon the issue of excluding fault in 1913 from consideration, the defendants could prevail only upon the theory that their liability for that fault ended with the close of their then tenure of office. The argument advanced is that as the selectmen's official powers end at the close of their term, therefore their liability under this statute terminated at the same time. If this position were sound, it might follow that no one would be liable here, although the accident was plainly and directly traceable to the wrong done by the defendants. If, for example, other selectmen had been elected in March, 1914, and the accident had happened before they had opportunity to learn of the situation, the plaintiff would, upon the defendants' theory, be without remedy. If it be said that their liability would continue, but only until their successors had reasonable opportunity to act, then the whole field is open to the plaintiff. Their successors would not be called upon to act until there was reasonable necessity for action. If the jury should conclude that the original situation was negligently created, but that it was not bad enough to call for lights or barriers, or for emergency repairs in the early spring of 1914, then the original liability would continue.

The statutory duty of the defendants to exercise care extended to all those with whom the situation brought them into relation. *Garland* v. *Railroad*, 76 N. H. 556. This included all travelers whom they ought to have anticipated might be affected by their conduct. It is manifest that the future effect of their present conduct upon others would not be terminated or affected by the fact that at some intermediate time they ceased to be in office. How remotely this relationship shall be traced, how far the chain of causation shall be followed as a matter of legal liability, is with us a question of fact. As a general rule, when the fault to which an injury is traced is one for the creation of which a defendant is responsible, it is no defence for him to show that at the time of injury it was beyond his power to remedy the wrong which he had theretofore done and

which continued to be a source of danger, and in fact resulted in the injury complained of.

Authorities elsewhere treating the question of proximate cause as one of law are not in point here; for in this state the question whether an existing condition, the absence of which would have made an accident impossible, is to be treated as the legal cause of the accident is one of fact. *Ela* v. *Company*, 71 N. H. 1, and cases cited; *Prichard* v. *Boscawen*, 78 N. H. 131, and cases cited.

However the rule may be as to intervening negligent acts, or negligent failures to avoid apparent consequences, as breaking the chain of legal causation, the rule here is entirely clear that when the intervening conduct is lawful, the question of proximate cause is for the jury, if reasonable men in the defendants' situation might have anticipated some such train of events as that which ensued. *Ela* v. *Company, supra.*

The liability here invoked is a statutory one, and the language used was manifestly intended to make it as broad and continuing as the chance of injury. The purpose was to substitute a primary liability of the person (official or otherwise) who caused the defect for the previously existing liability of the town. *Robertson* v. *Monroe, supra.* There is nothing novel in the imposition of such a burden. Leaving the highway in an unsuitable condition was in effect creating a nuisance. *Thomas* v. *Harrington*, 72 N. H. 45. One who creates a nuisance may be liable at common law for damages resulting therefrom although the injury may have been inflicted after he has parted with both title to and control over the *locus* of the nuisance. *Curtice* v. *Thompson*, 19 N. H. 471; *Eastman* v. *Company*, 44 N. H. 143, 156. "No case is to be found, in which it has been doubted, that he, who erects a nuisance, continues liable as long as the nuisance continues." *Plumer* v. *Harper*, 3 N. H. 88, 92.

It is true, as the defendants claim, that negligence in creating the situation and negligent failure to provide lights or barriers are distinct grounds of complaint. But if both may have existed, there is no reason why the plaintiff might not rely upon each and recover upon one or the other as the facts should prove to be.

The suggestion that if others had been elected selectmen in March, 1914, these defendants would not have been liable for the failure of their successors to provide lights or barriers, is sound. But it does not affect the present situation. As before pointed out, the later negligence being in this case that of the defendants, it is of no consequence upon the question now presented whether it existed or not.

If it existed, the plaintiff could recover for it in this suit. But since the jury might find that it did not exist, the plaintiff was entitled to also present her evidence of the earlier fault, even if it be assumed that the existence of later fault would make the earlier one immaterial.

Under the statute as interpreted in the former decision, the law imposed a duty upon these defendants for the plaintiff's benefit in 1913. When they were reëlected in 1914 it imposed upon them a similar duty. If they violated either duty the plaintiff may recover. If they violated both, she can recover for the later wrong in any event. She was not bound to bring one suit to recover for negligently making the ditch in 1913 and another for negligently failing to light it in 1914. The several wrongs resulted in one injury for which one recovery only can be had; and the plaintiff was entitled to present all her grounds in one suit. *Monroe* v. *Company*, 68 N. H. 89.

The defendants here rely chiefly upon an expression contained in the original draft of the opinion upon the former transfer of the case, but omitted from the official report. As between these, the printed reports are final. The opinions filed with the clerk at the time an order is made (Laws 1901, c. 78, s. 4) are comparable to the "full and accurate notes of each decision announced, and of the grounds and reasons assigned therefor" which, under the earlier practice, were to be taken by the state reporter when the decision was rendered. P. S., c. 214, s. 4. It was the duty of the court then, as now, to furnish the reporter a copy of the opinion in the case within sixty days. P. S., c. 214, s. 2; Laws 1901, c. 78, s. 16. The statutory direction that the opinions so furnished shall be published by the reporter (P. S., c. 214, s. 7), shows that such opinions, rather than the reporter's notes taken under the old law, or the opinions filed with the clerk under the new, are the final and authoritative record of what was or was not decided, and of the reasoning relied upon to sustain the conclusions reached.

The statement which was finally omitted was to the effect that "when or how the condition was created is immaterial." This was said in the course of the consideration of the road agent's liability. As the ground for liability is negligence and not trespass, it was concluded that the road agent was not liable because he was merely "obeying the directions of those in authority over him." As to him it was said that "When or how the condition was created is immaterial." If the statement had remained in the opinion as finally settled, it would not affect the result here. It was not made in reference to the liability of the selectmen.

˙ The defendants claim that they relied upon the opinion filed with
the clerk, construed it as applying in this respect to their case, and
so, without fault on their part, took a position which has resulted
in depriving them of a fair trial. It is not apparent how such a con-
clusion can be reached. The presiding justice ruled against their
contention. They then had notice that the position taken would
not be available to them in that trial, and their exception fully pro-
tected their rights in the premises. It is not claimed that any other
defence was abandoned or neglected in reliance upon this one.
An examination of the record clearly negatives any such idea.

It is further urged in support of this exception, that the former
decision draws an unwarranted distinction between the liability of
the selectmen and that of the road agent. Questions once decided
in this court are not ordinarily reëxamined in the same case upon a
subsequent transfer. *Whittemore* v. *Railroad*, 77 N. H. 61, 593.
The arguments now advanced were presented upon the former
transfer. As then pointed out, the claim that the discretion to be
exercised by the selectmen may be a judicial one is not an answer
to a liability expressly imposed by statute. "As the statute makes
them liable, common law rules relieving public officers from liability
are not in point. That the plaintiff was injured in the exercise of a
public right, or that the officers acted judicially — considerations
important in ascertaining the existence or otherwise of a common
law liability — do not repeal the statute." *Robertson* v. *Monroe,*
*supra*, 342. The distinction between the situation of the selectmen
and that of the road agent is that the former were under a duty to
exercise judgment and discretion, while the latter had merely to
obey orders. There seems to be no substantial reason for departing
in this instance from the established practice concerning questions
that have been once decided in the same case.

The remaining requests relate to the advice of the state authorities
as a defence. The provision that in the application of certain funds
appropriated by the town for permanent highway improvements
"such improvement to be made under the advice of the state engin-
eer" (Laws 1905, *c.* 35, *s.* 3), is not involved here. If it be assumed
that the town ought to have proceeded under this section, the fact
is that it did not do so. What the selectmen did was to apply for and
receive the free service of a division engineer employed by the state,
"for the purpose of consultation and advice concerning the construc- ˙
tion, improvement, and repair of the highways in such town."
*Ib., s.* 6. Whatever may be the rule as to proceedings under section

3, it is clear that the advice given under the provisions of section 6 is not the equivalent for an order to the selectmen or to the town. It follows that the requests to charge that the advice, if followed, freed the defendants from liability were rightly refused. It was still the duty of the selectmen to exercise their own judgment.

The defendants also criticise the instructions that were given to the jury. As no exceptions to the charge were taken, the questions suggested by this part of the argument are not before the court.

Exceptions were also taken to the closing argument of counsel for the plaintiff. In opening the case for the defendants, counsel stated that, as against the abutter, the defendants had the right to take away the approach. Plaintiff's counsel replied "that is not strictly the law . . . and in order that that situation may be cleared up, I want to refer to Public Statutes, chapter 73, section 23, . . . which reads that, 'In repairing highways, no uncovered trench or ditch shall be made by the side of the traveled part thereof next and opposite to a dwelling-house, yard, or private way leading into any field, land, or inclosure on the highway; nor shall the highway be repaired in any other manner to obstruct the passage to such house, yard, or private way. . . .' I speak of this because it is not true, as stated by defendants' counsel, that these selectmen in repairing the highway had a right to take out that driveway. But our claim is not based upon that statute but on another."

It is important to bear in mind that the controversy here is not one concerning inadmissible facts injected by counsel on one side and denied upon the other (*Knapp* v. *Stone*, 79 N. H. 32), but concerning the law governing the case. The defendants sought to justify their conduct by claiming that the act of removing the driveway, or constructing a ditch, was legal. The plaintiff denied this statement of law. "If counsel errs in his view of the law applicable to the facts, and urges the drawing of unwarranted inferences therefrom, so long as he makes no statement of fact outside the evidence a verdict in his favor will not be disturbed unless the court expressly or tacitly confirms his erroneous view of the law." *Story* v. *Railroad*, 70 N. H. 364, 376, and cases cited. Such confirmation of the error must be made to appear. It is not to be presumed. *Watts* v. *Company, ante*, 152, and cases cited. In the present case, all the evidence upon the subject is before the court, for the charge is reported in full. It appears from the record that the jury were instructed that there could not be a recovery upon any theory that the rights of the abutter had been violated. It is therefore unnecessary to consider whether the

plaintiff's counsel was using a proper argument when he denied the defendants' assertion as to a proposition of law which was not material to the issue of liability as submitted to the jury, or whether his statement that he did not rely upon the statute to make out his case would cure the error, if one was committed. *Butler* v. *Webster*, 79 N. H. 125.

In detailing the testimony as to what took place between the plaintiff and Holman just as she left his house, and in discussing the testimony of both, that Holman did not warn her to look out for the driveway, counsel stated that Holman testified that he accompanied her to the door. In fact the plaintiff so testified, but Holman did not. Upon exception being taken, counsel said he was merely giving his recollection of the evidence. So far as the fact in controversy (Holman's coming to the door) was material, its existence would be favorable to the defendants. His testimony that he saw no team and gave no warning, would be less probable if he went to the door than if he did not. The plaintiff's counsel made no particular point of Holman's movements, and based no argument upon the alleged going to the door. It is apparent that the error was an inconsequential one, for which the verdict should not be disturbed. *Guaranty Trust Co.* v. *Insurance Co.*, 79 N. H. 480. While the misrecollection and honest misstatement of the evidence ordinarily presents a question of fact as to the fairness of the trial (*Benoit* v. *Perkins*, 79 N. H. 11), there is no such question to be decided when it affirmatively appears that the error was a harmless one. *Parker* v. *New Boston*, 79 N. H. 54. The record showing that the error was harmless, a finding that the trial was thereby rendered unfair could not be sustained.

In arguing the opportunity the defendants had had to observe conditions as to light at the place of accident, counsel stated that "This case was brought in 1914. These defendants are familiar with our claims." The suit against the town was brought in 1914, and this suit in 1916. The trial was in 1921. It appeared that in 1914 the defendants knew the plaintiff made claim against the town of which they were the prudential officers. This error is also a harmless one. The only importance of the dates was to show that the defendants had for some years known of the plaintiff's claim. Whether that knowledge extended over only five years rather than seven, or whether it came from notice of a suit against the defendants, or of one against the principal whose interests they were bound to care for, is of no substantial consequence.

*Cote* v. *Michou, ante,* 41, which is relied upon by the defendants

as to the two remarks last considered, is not in point. In that case, "The erroneous statement did not concern an immaterial and inconsequential matter, but related to a point that was at the very heart and crux of the case." *Ib.*, 42.

In the closing argument for the defendants, counsel at one point argued upon the supposition that they ought to have maintained a light or barrier. Counsel for the plaintiff argued that the fact that defendants' counsel found it necessary to argue from that hypothesis "shows some weakness in his position." The argument is assailed as being "false in law, logic and fact." The only question of law involved is whether the inference could be drawn. This also involves the issue raised as to the logic of the situation. It is understood that theories of how a case should be argued to a jury vary greatly, that some advocates believe in dwelling upon their own strong positions in order to give them prominence in the minds of the jurors, while others follow the logical plan of attempting to answer what is against them. But whatever theory prevailed in the mind of defendants' counsel, it was the right of plaintiff's counsel to comment upon the argument that had been made, and to take advantage of any apparent admissions contained therein. The fact that counsel assumed for the purpose of a portion of his argument that the situation was bad enough to call for a light, warranted the drawing of the inference that counsel, speaking as the *alter ego* of the defendants, thought there was something in the claim that required an answer. Having thus expressed his thought that a fact might exist, he had so far admitted the existence of the fact that it became legitimate, both in law and in logic, for the plaintiff's counsel to argue it as he did. Admissions made by counsel in argument can be used in evidence against the client in subsequent proceedings. *Boston & Maine R. R. v. Sargent*, 70 N. H. 299, 307. Much more can they be taken advantage of in the same trial where they are made.

The defendants claimed that the cutting off of the approach was done under the advice of the state's engineer. Their testimony and that of the engineer was that he advised "one driveway to an abutter as far as possible." One talk to that effect was when they were in front of Holman's place, but there was no testimony that the engineer said anything about any particular driveway. Subject to exception, plaintiff's counsel said: "Do you believe the state engineer advised those men in violation of the statute I have read there? . . . To take out those two approaches or either of them." In view of the established construction of this statute (*Waldron v. Berry*, 51 N. H.

136), it is not perceived wherein the argument was improper. The statutory prohibition of open ditches opposite houses, etc. was not urged by counsel as a ground of liability, but merely as an evidentiary fact tending to induce the belief that the state official did not advise the act, since it was so prohibited.

While the advice of the engineer would not be conclusive on the question of the defendants' fault, the facts that they had it and relied upon it would be material in determining whether they acted with reasonable care. *Knowles* v. *Company*, 77 N. H. 268; *Little* v. *Company*, 69 N. H. 494. The jury were so instructed. It was therefore material to consider what advice was in fact given, and argument upon that question was proper.

But (the plaintiff's counsel continued) the advice did not control the selectmen. "They had threshed it out between these defendants; they were all of the same thought as they decided themselves." This is objected to as a misstatement of the evidence and "a fallacious misrepresentation of the testimony that these defendants after they had had the advice of the engineer decided the fact." In this connection counsel for the plaintiff also argued, subject to exception, that the defence of advice of the engineer was so little thought of that it was not mentioned at the first trial. As the latter argument is a foundation for the former one, it is considered first. It is objected to upon the ground that the first trial was conducted by the defendants upon a different theory, so that this question was then immaterial. The difficulty with this position is that it is not conclusively established by the evidence adduced at this trial. One of the defendants was asked by plaintiff's counsel about the decision as to this work and his former testimony, and said: "You didn't ask me about the division engineer then and didn't give me a chance to put it in." "You didn't give me a chance to make any explanation." Later in the trial, his former testimony was introduced and showed that his answers upon the subject were to questions put by his own counsel, without interruption by the plaintiff's counsel. This situation furnished ample grounds for the argument that was made. The defendants attempted to explain the failure to advance this defence at the first trial upon a ground which was shown to have no existence. It was competent for them to rebut the inference which might be drawn from their former conduct by explaining its real significance. *Bachman* v. *Insurance Co.*, 78 N. H. 100, 104. But when such explanation is attempted and fails, and especially when the attempted explanation consists of the party's own testimony

which is thereafter shown to be untrue, the original inference against him is given added weight. He has, by his own conduct, treated it as of considerable importance.

It was the defendants' right to introduce evidence to explain away the inference to be drawn from the failure to introduce the evidence at the first trial. The explanation now offered was not put in evidence. Whether, if it had been, it would have destroyed other inferences which could be drawn in its absence, is a question not now presented. As the case was left when the evidence was closed, the inference plaintiff's counsel sought to draw was a legitimate one. The conclusion that the defendants' reliance upon the advice of the engineer was an afterthought, and that the defendants decided the question upon their own judgment, was one that could be reached upon the evidence in the case.

Finally, the defendants urge that, in the respects complained of, the closing argument for the plaintiff contained repeated indulgences in fallacies and violations of the rules of logic, involving misrepresentations and erroneous inferences from facts, and that the situation could not have been anticipated by the defendants in their closing argument. Whether the argument for the plaintiff was so unexpected, fallacious and overpersuasive that the defendants ought to have had opportunity to reply (*Seely* v. *Insurance Co.*, 73 N. H. 339, 342, and cases cited), was a matter to be presented to the justice presiding at the trial. If it could be brought here at all, it plainly cannot be unless relief was asked for before the trial closed. *State* v. *Ketchen, ante,* 112.

*Exceptions overruled.*

All concurred.