23 So.2d 1

**MOUNTAIN BROOK ESTATES, Inc., v. SOLOMON.**

6 Div. 318.

Supreme Court of Alabama.

May 10, 1945.

Rehearing Denied July 26, 1945.

Smyer & Smyer, of Birmingham, for appellant..

Chas. M. Hewitt and Solomon & Berkowitz, all of Birmingham, for appellee.

BROWN, Justice.

The bill was filed December 16, 1943, by the appellee Solomon against the appellant Mountain Brook Estates, Inc., A. B. Tanner and William Jemison, and was subsequently amended, seeking to enjoin the defendants, "From committing any further trespass, either in connecton with, or without any use of said easement, upon any portion of complainant's property, and especially upon all portions of complainant's property outside of and included within said easement, and in general, * * * from any further misuser of said easement, or from any other illegal use or trespass upon complainant's property, and for general relief."

The defendants demurred to the bill as amended, and on submission on the demurrers, the court entered a decree sustaining the demurrers as to the individual defendants, with leave to complainant to amend, and overruled the demurrers of the defendant corporation.

The complainant failed to exercise the right to amend the bill and the defendants were entitled to have the bill dismissed. Dudley v. Whatley, 245 Ala. 202, 16 So.2d 192; McIntosh v. Alexander, 16 Ala. 87.

The defendant corporation failed to insist upon its right to have the bill dismissed, and filed an answer stating, "For further answer thereto respondent says that by reason of Complainant's failure to further amend his bill, it is this respondent's understanding that A. B. Tanner and William Jemison are no longer parties respondent in the above styled cause."

The case was submitted by the complainant and the corporate defendant on pleadings as thus formed, and the proof, and in the final decree, the court observed: "After consideration of the pleadings, exhibits and testimony in this cause the Court is of the opinion that the Complainant is entitled to an injunction against the respondent Mountain Brook Estates, Inc., restraining and enjoining the said respondent from causing or allowing water or other substance to flow or encroach upon the property of the complainant beyond the bounds of the defined easement of respondent upon said premises. The Court is further of the opinion that the said respondent should be granted a reasonable time to repair, modify or alter the artificial drainage system, same comprising said easement." The decree also awarded the complainant $100 compensatory damages for injury suffered from the overflow of surface water from said ditch into complainant's basement. From that decree the corporate defendants, Mountain Brook Estates, Inc., has appealed. Neither Tanner nor William Jemison were made parties to this appeal, they have not voluntarily appeared, and no steps have been taken to bring them within the jurisdiction of this court.

■ The cross assignments of error are directed only against said individual defendants, and for the reasons above stated, said cross assignments are without merit.

The decree of the court shows that the evidence consisted of testimony given ore tenus, answers of the defendant to interrogatories propounded to it under the statute, and documentary evidence. The testimony given ore tenus was not transcribed by the reporter nor is it incorporated in the record. In lieu thereof, the parties have substituted a statement of the substance of the testimony, which the trial court held was without dispute, and we think supports, in substance, the allegations of the bill as last amended. Therefore, the result must be cast upon the sufficiency or not of the allegations of the bill to make a case for equitable relief.

We state the substance of the bill's allegations. In the year 1926–27, the corporate defendant was the owner of urban property consisting of farm lands, rough and hilly in terrain. The quantity is not stated in the bill. This property was laid out in a subdivision known as "The Mountain Brook Estates," and each of said estates consisted of a commodious building lot laid out for residence purposes, and restricted to that purpose in the conveyance. Said subdivision was graded, streets and public ways established and laid out, a sanitary sewerage system was established, so that each of said estates could be equipped with modern conveniences; drains and sewers created to take care of surface water in time of rainfall, which included a ditch with concrete bottom, nine feet in width and four feet deep, which traversed the rear of Estate 290 and the Southwesterly 25 feet of Estate 159. The complainant purchased the above described property from the corporate defendant in February, 1941, some thirteen years or more after said ditch was installed by the corporate defendant on its own property. In the deed conveying said "Estate 290" and fractional part of "Estate 159" to complainant, the following reservation was made: "Easements are hereby reserved for sanitary sewerage and drainage ditch across said property, as shown from blue print attached marked Exhibit A, which is made a part hereof as fully and completely in all respects as if incorporated here." Said exhibit showed the existence and location of the drainage ditch and sanitary sewerage. Other reservations were made as to power lines and power wires and stay wires, not here important. Under the terms of the conveyance, the dwelling to be constructed was to cost not less than $10,000 in value, to be constructed according to the plans designed for said residential district, and the plans were to be, and were, approved by the grantor. Complainant's property is located in the "Canterbury Sector" fronting westerly on Canterbury Road, which leads northeasterly and southwesterly, and bounded on the southerly line by Cambridge Road, which leads in a northwesterly and southeasterly direction.

The surface water sewers and drains in said Canterbury Sector, as described in the bill, "consist of two circular concrete pipes, each 36″ in diameter same extending below the southerly boundary of Canterbury Road about 50 feet at which point the above described open artificial drainage ditch commences and thereafter about 60 feet downstream enters and extends across complainant's property. About 100 feet downstream and below complainant's said property, respondent corporation constructed as an outlet an opening under Cambridge Road.

Complainant represents unto the Court that the aforesaid drainage ditch is inadequate and is improperly constructed among other things in this, that the outlet is smaller in area than the inlets; that is to say, the area of the cross section of the outlet 12 square feet and the area of the cross section of the inlets is 14.1 feet. All and each part of the constructions just mentioned are a part of the said artificial drainage scheme wholly constructed by complainant both above, and downstream of, complainant's property; all as a part of its general scheme of drainage for the subdivision being sold by it to the public for profit."

At the time the drainage system was planned and constructed, the corporate defendant owned the dominant estate above said property, later purchased by complainant, and said two concrete storm sewers which emptied into said ditch, drained the dominant area above said Estate 290 in the Canterbury Sector.

All of said dominant estates had been sold by the corporate defendant for home sites before complainant purchased his lot, and said dominant estates had been improved by the construction of residences thereon, and the only property owned by the corporate defendant in said subdivision which was unsold was located outside of Canterbury Sector. To quote from the bill: "Complainant shows unto the court that the respondent corporation at the time of this amendment is still the owner of many unsold lots in said real estate subdivision of Mt. Brook Estates." The bill also avers that said ditch was not necessary to the draining of complainant's property, but was wholly for the benefit of the estates in the dominant area, sold by said respondent and developed by the purchasers.

Said drainage system, including said ditch, was completed in 1927 in laying out said subdivision and has remained in its then condition without repairs or maintenance by anyone, except the complainant, who undertook to heighten the west bank after the same overflowed on his property; and so far as the allegations of the bill show, said ditch had not overflowed and caused damage until the latter part of December, 1943, after complainant purchased said building lot and constructed his residence thereon. Before said first alleged overflow occurred and after complainant purchased his home site, said subdivision was incorporated in and became a part of the municipality of Mountain Brook, a municipal corporation, incorporated under the statutes providing for such corporation.

In paragraph 8 of the bill, the complainant draws bald conclusions as to the duty resting upon the corporate defendant in respect to said drainage ditch, not supported by the facts alleged in the bill. The bill also contains averments as to representations made by the sales agent Smith, who handled the negotiations with complainant and his wife in the sale of the property, as to the adequacy of the ditch to carry away surface water in time of rainfall. Nevertheless, the complainant accepted the conveyance of the property, without exacting any warranties or agreements, as to its adequacy to take care of the surface water in time of rainfall.

The substance of appellee's contention is that the holding corporation, Mt. Brook Estates, Inc., having laid out and established the drainage system in the development of said property (though said system was fully completed long before complainant purchased) said defendant is liable in damages because of an erroneous or defective construction of said drainage ditch at its outlet, and is under legal duty to correct such defect and maintain said drainage ditch and prevent overflows on complainant's property. That the overflow of said lot constitutes a trespass by said corporate defendant.

The appellant's contention, on the other hand, is that the easement reserved across the lot sold to complainant is appurtenant to the dominant estates above complainant's property, and passed with the disposal of said dominant estates, and no duty rests on the defendant corporation to maintain or reconstruct said drainage ditch for protection of said subservient estate.

The system of drains and sewers, as the bill alleges, was constructed by the said defendant in 1927, then the owner of all the property, both the dominant and subservient estates, and the establishment of the drain through the property subsequently purchased by the complainant was a lawful act incident to such ownership, and in contemplation of the sale of said respective estates to different persons for the establishment of suburban homes. The legal effect was to impose on the property subsequently purchased by complainant a servitude for the benefit of the dominant estates in the Can-

terbury Sector. This servitude and the reservation in the conveyance by the grantor made to complainant was not in gross for the personal benefit of the grantor, but was appurtenant to and became a part of the dominant estates drained by said drainage system.

"A rule of controlling importance, especially in doubtful cases, is, that such an easement is never presumed to be personal, or in gross, when it can fairly be construed to be appurtenant to some other estate. Washburn on Easements, 40, 232; Spensley v. Valentine, 34 Wis. 154; Dennis v. Wilson, supra (107 Mass. 591)." Parenthesis supplied. McMahon v. Williams, 79 Ala. 288, 291.

"An appurtenant easement is an incorporeal right which is attached to, and belongs with, some greater or superior right —something annexed to another thing more worthy and which passes as incident to it. It is incapable of existence separate and apart from the particular land to which it is annexed. * * *" 17 Am.Jur., 929, § 10.

The duty to maintain and repair, if it exists at all, arises out of proprietorship of the dominant estate, and its appurtenances, and where the easement exists for the sole benefit, use and enjoyment by the proprietor of the dominant estate, the proprietor of such estate ordinarily is liable for the cost of maintenance and repair. 67 C.J. p. 907, § 341.

It is very clear from the facts alleged in the bill that the easement and drainage ditch did not exist solely for the benefit of the dominant estates, but it was created and established as well to preserve the property which the complainant purchased, and upon which he erected his home. But for said ditch, the property purchased and owned by the complainant would have suffered the ravages of the drainage system in the Canterbury Sector. When the corporate defendant sold and conveyed all of said dominant estates in the sector, it ceased to be the proprietor of said dominant estates, and the responsibility of repair and maintenance, if it ever existed, passed to the grantees or ceased to exist.

Another principle is applicable which relieves said corporate defendant from liability. The complainant purchased with knowledge of the existence of said ditch which was open to ordinary observation and inspection, and subject to his judgment as to its sufficiency to protect his property. He purchased without exacting a warranty or other stipulation for his protection, and the alleged defect in the plans and original construction of the system cannot be made the basis of equitable relief under the facts as disclosed by the bill in this case. Mayor & Council of Union Springs v. Jones, 58 Ala. 654.

Another principle applicable—before the alleged overflow, the entire area constituting the Mountain Brook Estates, had been brought within the corporate limits of the municipality of Mountain Brook, and all the public ways, sewerage systems, drains and public easements became and were subject to the jurisdiction of said municipality, subject to its laws and ordinances, and whatever of responsibility previously existed to repair and maintain such public improvements passed to and rested upon said municipality. Code 1940, Tit. 37, §§ 168, 601-607; Browder v. Board of Commissioners of City of Montgomery, et al., 228 Ala. 687, 155 So. 366; 38 Am.Jur. 252.

Rules of law applicable to the diversion of water from natural drains, streams and water courses and casting them upon the property of another, or the pollution of such streams detrimental to lower proprietors have no application here, for the simple reason that the corporate defendant, while owning the entire property, had a right to improve it and destroy the natural drain down the ravine and provide other means of taking care of surface waters, so long as it was not cast upon the property of another. Nor are cases such as Tennessee C. I. & R. Co. v. Hartline, 244 Ala. 116, 11 So.2d 833, and Grady v. Wolsner, 46 Ala. 381, 7 Am. Rep. 593, applicable to the case made by the bill. In the first cited case, the alleged damnifying act was the result of positive negligence committed by an alleged trespasser, who was operating without the consent of the landowner. In the other case, the injury was the result of positive negligence of the defendant, in placing his stove so near the wall of the neighboring proprietor as that the heat destroyed the plaintiff's property and rendered his quarters uncomfortable, to the detriment of his business.

"Bills in chancery must set forth, not the evidence, but every material averment of fact necessary to complainant's

right of recovery. So complete must be the averments of fact, that on demurrer, or decree pro confesso, the court can, without evidence, be able to perceive and affirm that complainant is entitled to the relief prayed. Relief can only be granted on allegations and proof; and the latter will never be allowed to supply omissons or defects in the former. Allegations, admitted or proved, are the only premises which will uphold a chancery decree. * * *" McDonald v. Mobile Life Ins. Co., 56 Ala. 468, 470; City of Birmingham et al. v. Bollas, 209 Ala. 512, 96 So. 591.

The bill is without equity. The court, therefore, erred in overruling the demurrer of the corporate defendant to the bill of complaint as amended, and there is nothing apparent on the face of the bill to indicate that it can be amended so as to give it equity.

The decree of the circuit court is reversed, and a decree will here be rendered sustaining said demurrer to the bill as last amended, and dismissing the same.

Reversed and rendered.

All the Justices concur.

On Rehearing.

PER CURIAM.

Application overruled.

All the Justices concur, except GARDNER, C. J., and SIMPSON, J., who dissent.

GARDNER, Chief Justice (dissenting).

I am persuaded that the decree of the court below was correct and should be affirmed.

The whole matter may be embraced within a narrow compass. The bill discloses, and the proof sustains the averments, that complainant has erected a very substantial home on a lot purchased from the Mountain Brook Estates, Inc., defendant in this cause, in what is known as Mountain Brook. Upon this lot was a natural drainage ditch which the defendant corporation filled and abandoned, but in its stead devised and constructed an artificial drainage system through said property. A sewer pipe of defendant company crosses this artificial ditch and acts as a partial dam. This ditch so constructed by the defendant was 20 feet in width. In the warranty deed executed to the complainant, the grantor, defendant corporation, reserved an easement through said lot 20 feet wide for the construction of this drainage ditch. The bill charges, and the proof shows, that the ditch is insufficient to carry off the water drained through it, and that in fact this easement was reserved for the benefit of defendant corporation in draining other lots which it had or had sold in said subdivision, and not for the purpose of draining the lot purchased by the complainant. As a result of the insufficiency of this drainage ditch, during heavy rains it overflows beyond the limits of the easement and into complainant's residence, creating obnoxious and foul odors as well as an unhealthy condition.

It had been represented to the complainant at the time he purchased the lot that the ditch was sufficient for drainage purposes, and he saw no debris or other evidence of overflow. The first knowledge he had of the insufficiency was less than 12 months before the filing of this bill.

This brief statement suffices to show that complainant has suffered a grievous injury, which is continuous in its nature and properly to be defined as a nuisance. It is clear enough he should not be without remedy.

It is a well-settled principle that to protect a landowner against recurring injuries from wrongful diversion of water, equity has jurisdiction and may abate the nuisance. Town of York v. McAlpin, 232 Ala. 158, 167 So. 539; Mobile & O. R. Co. v. Red Feather Coal Co., 218 Ala. 582, 119 So. 606; Atlantic Coast Line Ry. v. Woolfolk, 178 Ala. 190, 59 So. 633.

It is said in the opinion that complainant purchased with knowledge. In the first place, the case of Nashville, C. & St. L. Ry. v. Yarbrough, 194 Ala. 162, 69 So. 582, is to the effect that a purchase with knowledge is no defense to an action of this character. Among the authorities there cited was that of Bigbee Fertilizer Co. v. Scott, 3 Ala.App. 385, 58 So. 86, 87, in which latter opinion it was pointed out that "the continuance and every use of that which is in its erection and use a nuisance is a new nuisance," against which the injured party has a remedy.

The opinion also states that complainant purchased without exacting a warranty. But it is difficult to understand what character of warranty he should have demanded. Certainly, it was not incumbent upon complainant to demand a warranty from the defendant corporation that it would not create

a nuisance. What was said in the Bigbee Fertilizer Co. case, supra, is applicable here —to the effect that he had a right to presume that the defendant would act lawfully and so conduct itself that he would be protected from needless injury to his property. It was not incumbent upon complainant to anticipate that the defendant would extend its easement beyond its bounds and trespass upon his property by flooding his lot and thus creating a nuisance. He had the right to assume that the defendant's erection of this ditch and its maintenance would suffice for the drainage purposes for which it was erected.

The opinion also indicates that the fact that other lots have been sold and the subdivision afterwards incorporated into a municipality relieved defendant of the alleged nuisance. But the holding in Lamb v. Roberts, 196 Ala. 679, 72 So. 309, L.R.A. 1916F, 1018, demonstrates that one who creates a nuisance, even on his own land, cannot escape responsibility therefor by conveying the property to another. See also 46 C.J. p. 744; 4 Restatement of the Law of Torts, pp. 276 and 7.

And as to the subsequent formation of a municipal corporation, 43 C.J. p. 1122 is to the effect that, where a defendant would otherwise be charged with liability, it is no defense that a municipality is also liable. Indeed, the liability of the original wrongdoer takes priority over that of the city. City of Birmingham v. Carle, 191 Ala. 539, 68 So. 22, L.R.A. 1915F, 797; City of Tuscaloosa v. Fair, 232 Ala. 129, 167 So. 276.

The New Hampshire Court in Robertson v. Monroe, 80 N.H. 258, 116 A. 92, states that no case is to be found in which it has been doubted that he who erects a nuisance continues liable as long as the nuisance continues. The cases of City of Birmingham v. Corr, 229 Ala. 321, 157 So. 56; Louisville & N. R. Co. v. Smith, 141 Ala. 335, 37 So. 490, and Ellard v. Goodall, 203 Ala. 476, 83 So. 568, also contain statements of principles which have a bearing upon the equity of this bill.

I am therefore persuaded that an application of well-settled principles of equity to the averments of this bill, and indeed, to the undisputed proof, discloses that the complainant was entitled to relief and that the trial judge reached the correct conclusion.

I, therefore, respectfully dissent.

SIMPSON, J., concurs in these views.