65 So.2d 148

## TARVER et al. v. TARVER.

### 4 Div. 730.

Supreme Court of Alabama.

April 30, 1953.

Smith & Smith and Roy L. Smith, Phenix City, for appellee.

Brassell & Brassell and Homer W. Cornett, Phenix City, for appellants.

STAKELY, Justice.

This is an appeal from a decree of the equity court sustaining the demurrer to the bill of complaint. The allegations of the bill of complaint show in substance the following. Joseph Tarver and eighteen other persons are the complainants and each is over the age of twenty-one years. Reese Tarver, who is over the age of twenty-one years, is the respondent. All of these parties are the heirs at law of Charles Tarver and Lizzie Tarver, being either their children or the children of their deceased children. Charles Tarver died on May 21, 1919, and Lizzie Tarver died on July 18, 1949. At the time of their deaths they owned about seventy acres of land lying in Russell County, Alabama, which is the subject-matter of this litigation.

On March 18, 1917, Charles Tarver and Lizzie Tarver executed a mortgage on the aforesaid lands to the Farmers & Merchants Bank of Hurtsboro, Alabama, to secure an indebtedness of $2,260.75. A copy of the mortgage is attached to the bill of complaint marked an exhibit and made a part of the bill of complaint.

At the time Charles Tarver died, R. C. Tarver, the respondent to the bill of complaint, took charge of all the property left by Charles Tarver, consisting of 18 bales of cotton, about 5 tons of corn, 5 mules, 6 head of cattle and 25 hogs, and in doing so led the complainants to believe and represented to them that he was using this property to pay the aforesaid mortgage indebtedness to the Farmers and Merchants Bank of Hurtsboro, Alabama, and "induced your complainants to permit him to use the same in extinguishment or payment of said debt due said bank."

Reese Tarver, however, did not pay the Bank of Hurtsboro and permitted the mortgage to be foreclosed by the bank without notice or knowledge to the complainants, who were at that time either minors or were absent from the state, one serving in the United States Army in France. A copy of the foreclosure deed is attached as an exhibit to the bill. It is alleged "and complainants aver that the said Reese Tarver did fraudulently obtain title to said lands from said Bank of Hurtsboro, by representing to your complainants that the property left by the said Charles Tarver and the farm earnings from the farm for the current year were sufficient to pay off said mortgage." A copy of the deed from the Farmers and Merchants Bank of Hurtsboro to Reese Tarver dated February 5, 1920, is attached to the bill of complaint and made a part thereof. It was recorded on February 9, 1920.

It is further alleged that Reese Tarver "did obtain title to said lands from the Farmers and Merchants Bank of Hurtsboro by fraudulently representing to your complainants that he had used the cotton, corn and other products that were left by Charles Tarver to pay or extinguish the debt owing to the said bank by the said Charles Tarver; and complainants further aver that they relied upon said statements made by the respondent Reese Tarver, who had' the active management of said lands, and complainants further charge that the said Reese Tarver worked a fraud upon them by permitting said mortgage to be foreclosed by the said Farmers and Merchants Bank of Hurtsboro and then purchasing the lands from the said bank with funds that belonged jointly to all the heirs of the said Charles Tarver, deceased."

With reference to the complainants, it is further alleged that, "they did not discover said fraud until the month of February, 1952, when they or some of them received notice in writing not to trespass on said lands and others who had continuously lived upon said lands received notice to pay rent or move from the premises."

The allegations of the bill further show that on December 1, 1951, Reese Tarver

made a mortgage to the Federal Land Bank of New Orleans in the sum of $1900, purporting to own in fee simple all of the lands and the complainants aver that "the said Reese Tarver did not own but an one-eighth interest in said lands." It is alleged that a copy of the mortgage to the Federal Land Bank of New Orleans is attached to the bill of complaint as Exhibit E and made a part of the bill.

It is further alleged that Reese Tarver after the execution of the aforesaid mortgage to the Federal Land Bank of New Orleans stated to the complainants that they all together had mortgaged the land and signed the mortgage and it was necessary to use the money so obtained to improve the lands. It is further alleged that the complainants relied upon the statements of Reese Tarver and paid their proportionate share due on the mortgage to the Federal Land Bank and that one of the complainants, Joseph Davis Tarver, paid the last payment to the Federal Land Bank of New Orleans for the benefit of the complainants and the respondent, the mortgage being marked paid and cancelled of record on July 26, 1946.

On April 18, 1922, Reese Tarver, the respondent, executed a mortgage to the First National Bank of Seale, Alabama, to secure an indebtedness of $796 on an undivided one-eighth interest of the estate of Charles Tarver, deceased. A copy of this mortgage is attached to the bill as an exhibit and made a part of the bill.

The complainants further allege that they and each of them had relied on the statements made to them concerning the payment of all debts due at the time of the death of their father, Charles Tarver, and had no knowledge that Reese Tarver had practiced a fraud upon them until February 6, 1952, at which time complainants were ordered to remain off the land or premises which is here involved.

The bill then contains allegations which aver the undivided interest of each of the complainants. A detailed statement of these interests not appearing to be necessary at this time, we do not set this out.

It is further alleged that the lands cannot be fairly and equitably divided or partitioned among the joint owners without a sale thereof. The bill further shows that the respondent Reese Tarver has had the use and profits accruing from the lands since the death of Charles Tarver on May 21, 1919, and in addition to the income from rents, sale of livestock, cotton, corn and other products of the land, valuable timber has from time to time been sold from the lands for which the respondent should account to the complainants and pay them their share of such rents, profits and moneys derived from the place.

The basic controversy which the case presents is whether the alleged rights of the appellants are barred by prescription, laches or the statute of limitations or whether the principles applying to cotenancy can save the situation for the appellants. Before, however, coming to the questions involved, it is necessary to take note of inconsistencies or omissions in the bill of complaint, because we must take the case as presented by the bill of complaint and the bill of complaint must be construed most strongly against the pleader. As has been shown above, it is alleged that Charles Tarver died on May 21, 1919, and Lizzie Tarver died on July 18, 1949, it being further alleged that at the time of their deaths they owned about seventy acres of land lying in Russell County, Alabama. However from the exhibits attached to the bill of complaint and made a part thereof, it is apparent that at the time of Charles Tarver's death he and one William Upshaw, Jr. each owned a one-half undivided interest in the property in controversy. The undivided one-half interest of William Upshaw, Jr. is not accounted for in the bill of complaint. It is not shown how the appellants acquired any interest in the undivided one-half interest of William Upshaw, Jr. The mortgage which was foreclosed by the Farmers and Merchants Bank of Hurtsboro, which appears as Exhibit B to the bill of complaint, was not only signed by Charles Tarver and wife Lizzie Tarver, but was also signed by William Upshaw, Jr. and wife Prudence Upshaw. The foreclosure deed of the Farmers and Merchants Bank of Hurtsboro, which appears as Exhibit C

to the bill, involved all the parties to the mortgage.

It will be noted as shown above that both Charles Tarver and Lizzie Tarver died seized and possessed of the lands in controversy. However the bill shows on its face that Lizzie Tarver had no interest in the property, never occupied the same after the death of her husband as her home and never took any steps to have any homestead set apart to her.

It is further averred in the bill that Reese Tarver made a loan from the Federal Land Bank of New Orleans and executed a mortgage on the property in controversy and that he stated to the complainants that they all together had mortgaged the land and signed the mortgage and it was necessary to use the proceeds of the loan to improve the land. There is nothing in the bill to show that the complainants did not know that they had not signed a mortgage and note to the Federal Land Bank of New Orleans or that they had not borrowed any money from the Federal Land Bank of New Orleans. A copy of this mortgage is not attached to the bill, as the bill alleges. It is argued that the complainants are ignorant and unlearned and could not read and write. There are no allegations in the bill however to this effect.

It is alleged that Reese Tarver sold valuable timber from the lands and has failed and refused to render to the complainants any accounting or to pay them their share of the rents, profits and money derived from the sale of timber. They do not allege when these transactions occurred but they do aver knowledge of these matters.

The bill alleges that some of the appellants remained continuously in possession of the property, but there is no allegation as to who remained in possession or how long or when their possession started or ceased.

From the allegations of the bill it appears that Reese Tarver acquired the property by deed from the Farmers & Merchants Bank of Hurtsboro, Alabama, on February 5, 1920, and that since that time Reese Tarver has had the management and control of the property, he has collected the rents from the property and has received and kept money derived from the sale of timber and all of this has been done over a period of about thirty years prior to the filing of the bill in this case. It does not appear from the bill that the appellants ever paid any taxes on the property during all these thirty years or that the property was returned by them for taxes and for aught that appears from the bill Reese Tarver has been listing the property for taxes and paying the taxes in all these years.

Recently in the case of Moss v. Davitt, 255 Ala. 513, 52 So.2d 515, we had occasion to discuss the matter of laches and showed that laches is not controlled by statute, since it is a creature of equity, and furthermore it was pointed out that in determining whether an action is barred by laches, the facts constituting fraud are deemed discovered when they should have been discovered. Butler v. Guaranty Savings & Loan Ass'n, 251 Ala. 449, 37 So.2d 638. Of course it is quite true that no arbitrary rule exists as to when a demand becomes stale and when delay will be excused and questions of laches are to be decided upon the particular circumstances of each case. Pittman v. Pittman, 257 Ala. 80, 57 So.2d 510. We have also further said that when claims of property rights which have been permitted to slumber without assertion or recognition for twenty years, are presumed to have no legal existence. Moss v. Davitt, supra; Jellerson v. Pettus, 132 Ala. 671, 32 So. 663.

It seems to us to be clear that under the allegations of the bill Reese Tarver not only did not recognize any adverse rights in favor of the appellants, but on the contrary he denied them. See Moss v. Davitt, supra; Wise v. Helms, 252 Ala. 227, 40 So.2d 700.

The appellants appear to rely upon the case of Markstein v. Schilleci, Ala.Sup., 61 So.2d 75. In that case however it was not shown that the appellants had any knowledge of the adverse claim asserted under a tax title acquired from the state. As has been pointed out in the case at bar, the bill shows that the appellee has been cutting and sawing timber, collecting rents and failing to account for the same

and that this has continued for more than thirty years. The appellants also rely on the case of Woods v. Allison Lumber Co., Ala.Sup., 62 So.2d 299.[1] In that case it was contended that laches does not run while complainants are in possession of the property for which relief is sought, but as has been pointed out, it is not shown in the present bill which complainants were in possession and if in possession for how long and when such possession began or when it terminated.

 As pointed out Reese Tarver claims under a deed made to him by the Farmers and Merchants Bank of Hurtsboro on February 5, 1920. If the complainants have any rights, it must be as the heirs of Charles Tarver, deceased, and the aforesaid deed to Reese Tarver must be declared invalid or decreed to be for the benefit of all the alleged tenants in common. Betts v. Betts, 250 Ala. 479, 35 So.2d 91. It is quite true that before a tenant in common can rely on his ouster of his cotenants, he must claim the entire title to the land himself, must hold exclusive adverse possession against every other person and repudiate the relationship of cotenancy. Courtner v. Etheredge, 149 Ala. 78, 43 So. 368; Inglis v. Webb, 117 Ala. 387, 23 So. 125. Furthermore, laches is not imputed to one who is in possession of the property because until his title is attacked he is at liberty to wait without being chargeable with laches or affected by the statute of limitations. Ammons v. Ammons, 253 Ala. 82, 42 So.2d 776. It is furthermore true that where one tenant in common is in possession of the property, such possession may be regarded as the possession of all the cotenants until rendered adverse by some act or declaration by him repudiating their interest in the property. Livingston v. Livingston, 210 Ala. 420, 98 So. 281; Larkin v. Haralson, 189 Ala. 147, 66 So. 459. However, we do not consider that the bill as now framed shows that a cotenancy has survived, since the death of Charles Tarver. Facts should be alleged which clearly show the survival of the cotenancy, despite the deed made by the Bank of Hurtsboro to Reese Tarver and his acts relating to the property. Miller v. Vizard Investment Co., 195 Ala. 467, 70 So. 639; Heath v. Lewis, 200 Ala. 509, 76 So. 451; Jones v. Rutledge, 202 Ala. 213, 80 So. 35.

As the bill is now framed we consider that the court was correct in sustaining the demurrer thereto.

Affirmed.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.