235 So.2d 665

**Elizabeth LYNN et al.**

**v.**

**Rebecca JERNIGAN et al.**

**3 Div. 418.**

Supreme Court of Alabama.

April 30, 1970.

Rehearing Denied May 28, 1970.

Carl R. Robinson, Bessemer, for appellants.

Brooks, Garrett & Thompson, Brewton, J. Connor Owens, Jr., Bay Minette, for appellees.

HARWOOD, Justice.

The appellants here filed a bill seeking to have certain lands in Escambia County, Alabama, some 200 acres, sold for division.

As originally filed, Elizabeth Lynn, Margaret Fant, Albert Harris, Herman Harris, and Frank Harris were named as complainants, and Rebecca Jernigan, James Harris, Jr., Bobby Harris and Billy Harris were named as respondents.

Respondent Rebecca Jernigan, filed an answer asserting that she had no claim to the land in question, and to the best of her knowledge, information, and belief, James Harris, Jr., is the sole owner of the land in question.

Frank Harris, one of the named complainants, filed a document asserting he was not a complainant in the cause. The bill was then amended to strike Frank Harris as a complainant and add him as a respondent. Frank Harris then filed an answer denying any joint ownership in the land in question by the complainants and respondents, and asserting that James W. Harris was owner of the land by virtue of a deed to the land executed by Frank W. Harris to James W. Harris in June 1952, as shown by deed recorded in the Probate Office of Escambia County.

The bill was further amended by adding the Citizens-Farmers and Merchants Bank, a corporation, and Frances Green and G. G. Crenshaw, as joint guardians of Billy Harris, a minor over the age of 14 years.

It is apparent from the bill that the land in question was originally owned by William H. Harris. William H. Harris left

seven children surviving him, three daughters, Elizabeth Lynn, Margaret Fant, Rebecca Jernigan, and four sons, Albert, Herman, Frank, and James. James has died leaving as survivors Bobby and Billy Harris. All of the above named are over the age of 21 years, except Billy. Service was had on the guardian of Billy.

The bill discloses that William H. Harris, the original owner of the land in question and his wife Mary, mortgaged the same to the Cedar Creek Store Company on 21 October 1911, the mortgage being duly recorded.

On 8 December 1924, Cedar Creek Store Company foreclosed this mortgage and took title to the land for a consideration of $831.00. This instrument was duly recorded.

By quit claim deed Cedar Creek Store Company conveyed the property to J. W. Harris on 5 February 1927.

In connection with this quit claim the bill avers that from the time of the foreclosure of the mortgage by Cedar Creek Store Company in 1924, William H. Harris remained on the land and exercised full control thereof for more than 20 years after the conveyance to J. W. Harris; that although the title was taken in the name of J. W. Harris each member of the family understood and considered the transfer to J. W. Harris to be a redemption of the property from the mortgage sale, and different members of the family contributed to the redemption cost.

On 25 May 1931, J. W. Harris mortgaged the property to respondent Frank Harris to secure a debt of $250.00. This mortgage was duly recorded.

On 22 January 1945, this mortgage was foreclosed and title was taken by Frank Harris. This instrument was duly recorded.

In June 1952, Frank Harris conveyed the property to respondent James W. Harris, Jr., which deed was duly recorded.

James W. Harris died (no date of his death is shown) and left three children surviving, the respondent James W. Harris, Jr., and Bobby and Billy.

The bill avers that "at the time of his death, J. W. Harris purportedly willed his interest in the land to J. W. Harris, Jr." The bill asserts that Frank Harris, during the time he held paper title to the land, did not go into possession of the land, did not assess it for taxes, but continued to recognize the title and ownership of the property in his father, William H. Harris, who died in 1947.

The bill as amended further shows that on 23 October 1965, the respondent James Harris, Jr., executed a mortgage on part of the land in question to the respondent Citizens-Farmers and Merchants Bank to secure a loan of $10,250.00, which mortgage was duly recorded.

The respondent James Harris filed a demurrer to the bill on the grounds that the bill showed on its face that the complainants failed to exercise within a reasonable time any rights they may have had, which failure has worked to the prejudice of J. W. Harris, Jr., and the bank.

On 29 May 1968, the court entered an order sustaining the demurrer to the bill as last amended.

On 8 October 1968, the court entered an order reciting that the demurrer of the respondents to the bill as last amended having been sustained on 29 May 1968, with the complainants being given twenty days to plead further, and having failed to do so, the cause was dismissed on motion of the respondents, with prejudice.

We are in accord with the assertion of appellees' counsel in brief that appellants appear to base their assertions of error on the following principles:

1. That the conveyance of the suit land to J. W. Harris by the Cedar Creek Store Company in 1927 was, in fact, a redemption from the mortgage sale.

2. That a resulting trust arose in favor of the appellants from the purchase of the land by J. W. Harris.

3. That William Harris, the original owner, regained title to the land by prescription by his continued possession of the land from 1927 through 1947.

It is established that a demurrer will lie for laches as well as for statutory limitation appearing on the face of the bill. Sykes v. Sykes, 262 Ala. 277, 78 So.2d 273; Smith v. Hart, 259 Ala. 7, 65 So.2d 501; Fowler v. Alabama Iron and Steel Co., 164 Ala. 414, 51 So. 393.

On demurrer facts well pleaded will be treated as true and those uncertain will be construed against the pleader. Kelen v. Brewer, 221 Ala. 445, 129 So. 23.

In the light of these principles we look to the appellants' assertions of error.

The bill avers that different members of the family contributed to the cost of redeeming the land, and each member of the family understood the conveyance of the land to J. W. Harris by the Cedar Creek Store Company in 1927 to be a redemption of the land from the mortgage.

The averments do not disclose which members of the family contributed nor in what amounts.

Further, the statutory right of redemption must be exercised by those to whom this right is granted within two years after a sale under the mortgage. Section 10140, Code of 1923, (now Section 727, Title 7, Code of Alabama 1940). The redemption rights resulting from the foreclosure of the Cedar Creek Store Company mortgage on 8 December 1924, expired on 8 December 1926. Cedar Creek Coal Company conveyed the land to J. W. Harris on 5 February 1927, almost 13 months after the redemptive rights had expired.

Nor do we consider the bill avers sufficient facts to show a resulting trust. It avers that "different members of Complainants and Respondents contributed to the redemption cost. That although the title was taken in the name of J. W. Harris each member of the family understood and considered the transfer to be a redemption of the property from the mortgage foreclosure sale. That said William Harris and his wife, Mary Harris continued in possession of said property until their death. * * * That although the title to said property was held in the name of J. W. Harris the real ownership of said property was in William Harris and this ownership was recognized by J. W. Harris and all of the Complainants and Respondents who were members of the family." Thus it is not clear whether the alleged resulting trust is to be considered in the contributors or in William Harris. Again, who made the contributions, and the respective amounts contributed is not shown.

A bill in chancery must aver material facts so completely that on demurrer, or decree pro confesso, the Chancellor can, without evidence, be able to perceive and affirm that a complainant is entitled to the relief prayed. McDonald v. Mobile Life Ins. Co., 56 Ala. 468; City of Birmingham, et al v. Bollas, 209 Ala. 512, 96 So. 591, Mountain Brook Estates, Inc. v. Solomon, 247 Ala. 157, 23 So.2d 1.

As to the theory of acquisition of title by William Harris by prescription despite the foreclosure of the mortgage and subsequent conveyances, the bill avers:

"That the said William Harris cultivated the said lands and sold timber therefrom and exercised complete ownership and dominion over said lands for more than 20 years after the conveyance of said lands to J. W. Harris."

This is not an allegation of possession hostile and adverse to the title of J. W. Harris and his successors.

While the bill avers that J. W. Harris recognized the title of William Harris,

the bill also avers that after acquiring title by quit claim deed on 5 February 1927, J. W. Harris mortgaged the property to Frank Harris on 25 May 1931. Such action was of course incompatible with any recognition by J. W. Harris of title in William Harris.

The question of immediate concern in this review is whether the Chancellor properly sustained the demurrer because of laches, this being the only ground assigned in support of the demurrer.

In Ussery v. Darrow, 238 Ala. 67, 188 So. 885, it is stated:

"The principle of laches is as follows: 'Where, from delay, any conclusion the court may arrive at must at best be conjectural, and the original transactions have become so obscured by lapse of time, loss of evidence, and death of parties as to render it difficult if not impossible to do justice, the complainant will by his laches be precluded from relief.'"

In addition to the long delay by the complainants, it appears from the bill that William and Mary Harris, and J. W. Harris are dead. The knowledge of these three as to the true nature of the transaction when J. W. Harris acquired the land in 1927 is unavailable. The Citizens-Farmers and Merchants Bank has acquired an interest in the land or a portion thereof. The record title would justify reliance by the bank in accepting J. W. Harris, Jr.'s interest as security for the mortgage.

Under all these circumstances we hold that the Chancellor properly sustained the demurrer to the bill on the ground of laches.

Affirmed.

LAWSON, MERRILL, MADDOX and McCALL, JJ., concur.