294 So.2d 147

**Walter JENKS et al.**

**v.**

**Bryant Henry JENKS et al.**

**SC 297.**

Supreme Court of Alabama.

May 2, 1974.

J. B. Blackburn, Bay Minette, for appellants.

Wilters & Brantley, Bay Minette, for appellees.

COLEMAN, Justice.

Respondents appeal from decree ordering the sale of a parcel of land, "Less all oil, gas and mineral rights," for division of the proceeds of sale among the owners of the land.

Complainants and respondents claim title through a common ancestor, Bryant Henry Jenks, who acquired title by a deed from Dixie Mills Company dated October 27, 1894. The parcel contains 38¾ acres.

The bill of complaint was filed July 31, 1970. In the amended bill, complainants aver that Bryant Henry Jenks died intestate about sixty years ago; that his widow is now deceased; and that she was survived by three children, namely: Jesse Jenks, Azoobah Jenks, and William Jenks. Although not specifically averred, it appears that the three children named were also the children of Bryant Henry Jenks.

It is averred that William Jenks died in 1958, that he died testate but his will was not probated, and that he was survived by six children and two grandchildren who are the children of a deceased daughter who died intestate.

The six children and two grandchildren, and also Alton English and Lula English Chambers, are the complainants. The connection of Alton English and Lula English

Chambers with the land in suit is not shown. Respondents aver in their answer that Alton English and Lula English Chambers are not heirs of Bryant Henry Jenks and own no interest in the land. In the final decree they are not awarded any interest in the land, but no mention of this fact is made in briefs and further discussion in this regard is pretermitted.

The respondents are five children of Jesse Jenks, who died testate. His will was admitted to probate August 26, 1970. By his will he gave to Azoobah Jenks a life estate in his real property with remainder to his five children, the respondents. By a recorded deed Azoobah Jenks conveyed her interest in the land to the five respondents. Azoobah Jenks is now dead.

Complainants aver that the land is now owned, one-third by said six children and two grandchildren of William Jenks, and two-thirds by the five respondents.

Complainants aver that the land cannot be equitably partitioned among the owners without a sale and pray for a sale and division of the proceeds according to the respective interests of the parties and for an attorneys' fee.

The original bill was filed July 31, 1970. Respondents filed demurrer August 26, 1970. Complainants filed amendment to the bill November 6, 1970. Respondents refiled demurrer to the amended bill on December 3, 1970. On August 26, 1971, the court overruled demurrer to the bill as amended.

On December 13, 1972, complainants filed a substituted draft rewriting the entire bill.

On December 15, 1972, respondents filed demurrer, pleas, and answer to the bill as last amended, and also a cross bill. There is no decree ruling on respondents' demurrer to the bill as last amended.

Respondents assign as error that the court erred in its decree of August 26, 1971, in overruling the demurrer to the bill as amended at that time.

As stated above complainants filed an entirely rewritten bill on December 13, 1972. In the decree of August 26, 1971, the court overruled a demurrer to a bill which ceased to be complainants' bill after the substituted bill was filed December 13, 1972. The final decree in this cause is based on the substituted bill and not on the bill to which respondents filed their demurrer which was overruled by the decree dated August 26, 1971. Any error in overruling the demurrer to the original bill on August 26, 1971, cannot injure respondents where the final decree is based on a substituted bill which was filed on December 13, 1972.

As noted above, respondents filed demurrer to the substituted bill which was filed December 13, 1972; but there is no decree ruling on respondents' demurrer to said substituted bill. Respondents assign as error that the court erred in failing to sustain and in failing to rule on respondents' demurrer to the bill as last amended.

The record does not show that respondents called their last demurrer to the attention of the court or moved to set the case for hearing on their last demurrer, or otherwise insisted that the court rule on said demurrer. In such a case, it will be presumed that the demurrer was waived. This court has said:

"The demurrer of defendant in this cause was filed with his answer; and the attention of the court appears not to have been directed to it. No judgment is thereupon rendered. The submission entry recites: 'This day came the parties by their solicitors, and this cause is submitted for final decree on the pleadings and proof.' Then follows a note of the evidence offered on behalf of each party. As nothing was said about the demurrer, and the parties proceeded to a trial, we must consider that the demurrer was waived by defendant. Chapman v.

Hamilton, 19 Ala. 121." Daughdrill v. Helms, 53 Ala. 62, 65.

In a more recent case, the court said:

"Petitioner complains that the court failed to rule on demurrers filed to the bill of complaint. Respondent's answer shows that the demurrers were not called to the attention of the court and that petitioner submitted the issues of fact to two juries without insisting on a ruling on the demurrers. They were therefore waived. Lampkin v. Strawbridge, 243 Ala. 558, 11 So.2d 130; McMillan v. State ex rel. Biggs, 218 Ala. 602, 119 So. 652." Ex parte State, 246 Ala. 277, 279, 20 So.2d 232, 234.

Assignments 1, 2, and 3 are without merit.

In their pleas to the bill as last amended, respondents aver that complainants' cause of action is barred by laches, the ten-year statute of limitation, and the doctrine of prescription.

In their answer, respondents deny that complainants own any interest in the land, and aver that their father, Jesse Jenks, was in possession of and claimed to own the land and that he assessed and paid taxes on the land as his own in 1913 and continued to assess and pay taxes thereon until his death, and that his executor has done so since his death.

In their cross bill, respondents aver that at the time of filing of "this action" and on "this date," respondents were in peaceable possession of and claimed to own the land, that no other suit is pending to test the title claimed by complainants. Respondents call on complainants to set forth their interest or claim to the land, and pray that the court render decree quieting title in respondents against complainants.

Complainants deny the allegations of the cross bill.

Testimony was heard by the court ore tenus.

The court rendered decree finding that Bryant Henry Jenks owned the land by virtue of the recorded deed, that his heirs were the three children, Jesse, Azoobah, and William Jenks, that William died in 1958, and that his property passed to his children and two grandchildren who are complainants.

The court found that Jesse Jenks died testate and by will gave life estate to Azoobah Jenks with remainder to respondents, and that Azoobah Jenks conveyed all her interest in the land to respondents.

The court found that respondents have failed to establish title by prescription or adverse possession and that the land is owned one-third by complainants and two-thirds by respondents; the precise proportion owned by each person being set out in the decree.

The court, based on its own knowledge, finds that exploration for minerals, in the area where the land is located, is intense and the land is potentially of great value, and that these mineral rights can be equitably divided.

"9. The Court finds further that the aforesaid land can not be equitably divided because of the small parcels into which the same would be divided and the fact that a house is located on the same."

The court finds that complainants are entitled to the relief prayed for in their bill; that the oil, gas, and mineral rights in and under said property can be equitably divided; and now vests complainants and respondents with all oil, gas, and mineral rights in the land in the proportions heretofore set out in the decree.

The court orders sale of the land less the oil, gas, and mineral rights, and that upon coming in of the report of the sale, the court will proceed to ascertain what is a reasonable attorneys' fee for complainants, "all other questions reserved."

Respondents contend that the court erred in finding that complainants were entitled

to relief because the evidence shows that complainants' claim of title is barred by laches, the ten-year statute, and prescription.

All parties agree that Bryant Henry Jenks acquired title by deed in 1894. It appears that he died about 1909. It also appears that William Jenks, father of complainants, moved off the land about 1903 and that the widow of Bryant Henry Jenks, Jesse Jenks, and Azoobah Jenks continued to live on the land until the time, or about the time, of their deaths. The widow died about 1932, Jesse in 1970, and Azoobah died after the instant suit was commenced. William died in 1958.

Respondents argue in brief as follows:

"There is some evidence to the effect that Will Jenks farmed a part of the property many years ago, but there is no evidence that this was done under a claim of ownership or by permission from Jesse Jenks.

"More than sixty-six years elapsed between the time that Will Jenks moved from the property until this suit was filed. Will or William Jenks' cause of action accrued when his father, Bryant Henry Jenks, died in 1909 and the statute of limitations or doctrine of prescription began to run against him at that time. Forty-nine years elapsed between the death of Bryant Henry Jenks in 1909 and the date of the death of Will or William Jenks in 1958. The appellees had no cause of action when their father died in 1958 because their father's cause of action had been more than twice barred by the doctrine of prescription when he died in 1958. Approximately twelve years elapsed between the death of Will or William Jenks in 1958 and the time when this suit was filed in 1970.

"Because of these facts, appellees' cause of action is barred by laches, by the ten-year statute of limitations, and by the doctrine of prescription. The trial court should have rendered a decree denying the relief prayed for by the appellees instead of granting them the relief which they sought in their bill of complaint."

Respondents cite Lynn v. Jernigan, 285 Ala. 632, 235 So.2d 665, in support of their position. The circumstances which were shown to exist in *Lynn* differ greatly from the circumstances here. There minors, mortgages, foreclosure, and redemption were among the ramifications involved. Here the facts are relatively simple. Here the passage of time did not alter the situation where two of three tenants in common remained on the land and the third did not.

"It is a familiar rule that the possession of one tenant in common is prima facie thereby the possession of all and it does not become adverse to the cotenants unless they are actually ousted, or short of this, unless the adverse character of the possession of one is actually known to the others, or the possession of one is so open and notorious in its hostility and exclusiveness as to put the cotenants on notice of its adverse character. . . ." Barry v. Thomas, 273 Ala. 527, 531, 142 So.2d 918, 922.

". . . The possession of a tenant in common exercising customary acts of ownership does not alone operate as disseisin of cotenant, but there must be positive information of facts, however informally communicated or acquired. Ratliff v. Ratliff, 234 Ala. 320, 175 So. 259. Before a tenant in common can rely on his ouster of his cotenant, he must claim entire title to the land, must hold exclusive adverse possession against every other person, and repudiate relation of cotenancy. Tarver v. Tarver, 258 Ala. 683, 65 So.2d 148. . . ." Foshee v. Foshee, 278 Ala. 205, 207, 177 So.2d 99, 101.

There is testimony that William and his children farmed part of the land, that William helped roof the house and make re-

pairs to it, that the husband of one of complainants helped wire the house in 1962; that some of complainants hunted on the property several times a year; that none of complainants had knowledge that Jesse claimed the land adversely to them.

Arthur Jenks, one of the respondents, testified:

"Q. I will ask you if your father claimed to own this tract of land?

"A. Well he never said nothing to me, but I suppose he did.

". . .

"Q. This Mr. McLeod that helped you with the wiring—

"A. —Yes sir, me and him done it.

"Q. That is the husband of one of the heirs to this property?

"A. That is right.

"Q. Did these boys hunt there when they wanted to?

"A. Yes sir.

"Q. Always did that?

"A. Yes sir, we all would hunt there.

". . .

"Q. During all of this time did you ever hear your daddy say 'I'm going to take this property away from William'?

"A. No sir.

"Q. Did you ever hear him say: 'I'm going to take this property away from Azoobah?(')

"A. No sir.

"Q. Did you ever hear him say 'This is my land'

"A. No sir.

"Q. As far as you knew the property still belonged to Miss Azoobah and the William Jenks heirs?

"A. I never knew anything about it.

"Q. You never knew anything different from that, did you?

"A. No sir."

The respondent Walter Jenks, oldest son of Jesse Jenks, testified:

"Q. Did you ever hear your, father say: 'This is my place—William doesn't have any interest in it?'

"A. I have heard him say many times it was his, but not that William didn't have any interest.

". . .

"Q. Have you or any of your brothers and sisters told these people: 'This is our land and you have no interest in it?'

"A. No.

"Q. Is it your position that they have no interest in it?

"A. I don't know who owns it."

This court has said:

"Where the question of laches is presented, the facts and circumstances of each case govern the court in the exercise of the discretion thereby invoked for the determination of the inquiry. Waddail v. Vassar et al., 196 Ala. 184, 72 So. 14.

"It has often been declared that mere delay which has resulted in no disadvantage to another or that has not operated to bring about changes in conditions or circumstances, in consequence of which 'there can be no longer a safe determination of the controversy,' will not serve to bar complainant's right or remedy. Craig v. Root, 247 Ala. 479, 25 So.2d 147, 150, and cases cited." Ellis v. Stickney, 253 Ala. 86, 95, 42 So.2d 779, 787.

On the evidence in the instant case, the trial court is not due to be reversed for failure to find complainants guilty of laches.

In a case similar to the case at bar, this court said:

". . . The possession of one tenant in common is prima facie presumed to be the possession of all, and it does not become adverse to the cotenants unless they are actually ousted, or, short of this, unless the adverse character of the possession of one is actually known to the others, or the possession of the one is so open and notorious in its hostility and exclusiveness as to put the other tenants on notice of its adverse character. Ashford v. Ashford, 136 Ala. 631, 34 So. 10.

"The mere fact that a cotenant in possession has taken all the rents and profits does not show ouster of his companions. Markstein v. Schilleci, 258 Ala. 68, 61 So.2d 75, and cases there cited.

"Mere lapse of time and payment of taxes by one cotenant are not, in tenancies in common, necessarily acts of disseisin. There must be an entry and continuous exclusive possession under a claim of exclusive right. Possession and use by one tenant in common will not, of itself, repel the presumption that the possession is that of all the tenants in common. The intent to hold as exclusive owner, repudiating the rights of cotenants, must be established by proof and brought home to them. . . ." Monte v. Montalbano, 274 Ala. 6, 11, 145 So.2d 197, 200.[1]

◼ The evidence in the instant case supports a finding that any intent of Jesse Jenks, or of respondents, to hold adversely to complainants was never brought home to complainants or their father, and that the possession under which respondents claim was not adverse to complainants so as to deprive them of their title to one-third of the land. Assignments 4 and 7 are not sustained.

The description of land in the bill of complaint commences with the words "Commence at the Southeast corner of Section 11."

The description in the final decree commences with the same words.

The description in complainants' Exhibit 3 (deed of 1894 to Bryant Jenks), commences with the words:

"Commencing at the S.W. corner of Section Eleven . . ."

Complainants filed motion on February 2, 1973, praying that the court substitute the word "Southwest" for the word "Southeast" in the final decree. Complainants also pray that the date of sale be changed from February 19 to February 26.

The court granted the motion and amended the decree on the same day the motion was filed.

Respondents assign rendition of the amended decree as error. Respondents say that the bill of complaint erroneously described the property and there is no question but that the description was erroneous, but also say that respondents should have been given notice and opportunity to be heard before the decree was amended.

1. In reply brief, respondents say that in Monte v. Montalbano, 274 Ala. 6, 145 So.2d 197, "suit was filed in January, *1948*" (Emphasis Supplied), and: "See page 9 of Volume 274 Ala."

In 274 Ala. at page 9, in the right-hand column, the last sentence of the first full paragraph in that column recites, 145 So.2d at page 198:

"Suit was begun in January, *1958*." (Emphasis Supplied)

We have also examined the original opinion filed in this court in Monte v. Montalbano, supra. On the second line on page 3 of the original opinion, the following appears:

"Suit was begun in January, 1958."

In the original record on file in this court in *Monte*, on page 4, at the conclusion of the bill of complaint, the following appears:

"Filed in Office: January 22, 1958 Elmore McAdory, Circuit Clerk and Register"

The conclusion is inescapable that suit was filed in January of 1958 and not in 1948.

Although the amendment to the description changed only two letters in the description, the result of the change is to move the starting point one mile. We agree that respondents were entitled to notice and hearing, but do not understand that the amendment should not be made. Accordingly, we find no reversible error in the amendment. Assignment 5 does not show reversible error.

Respondents assign as error the failure of the court to order the sale of the oil, gas, and mineral rights. We hold this to be reversible error.

We are not advised that the statute, Title 47, § 186, empowers the circuit court to sell less than the entire estate which is owned by the parties to the suit. None of the parties in the instant case have prayed that the oil, gas, and mineral rights not be sold. Complainants did pray that the land be sold without any prayer that part of the estate in the land be excepted from the sale. The exception of the oil, gas, and mineral rights from sale is not within the issues made by the parties and is error to reverse. Matthews v. Matthews, 292 Ala. 1, 288 So.2d 110, rehearing overruled January 24, 1974. It is the order of this court that the words: "Less all oil, gas and mineral rights" be stricken from the decree.

The remainder of the decree is affirmed, except as to the date fixed for sale which has passed. The cause is remanded for further proceedings with directions to sell the land and divide the proceeds according to the terms of the decree as affirmed.

Affirmed in part.

Reversed in part, and remanded with directions.

HEFLIN, C. J., and BLOODWORTH, McCALL and JONES, JJ., concur.