320 So.2d 665

**Hardie JONES et al.**

v.

**Geraldine BALL et al.**

**SC 1212.**

Supreme Court of Alabama.

Oct. 2, 1975.

Beck & Beck, Fort Payne, for appellants.

Kellett & Scruggs, Fort Payne, for appellees.

EMBRY, Justice.

The action from which this appeal stems commenced with the filing of a statutory bill to quiet title by plaintiffs, Hardie Jones and wife. The bill alleged title in him derived from adverse possession to, and ouster of his cotenants, the defendants. Defendants' answer denied title in him. They counterclaimed and prayed for sale and division of proceeds from sale of the property. The trial court denied

relief to plaintiffs and granted relief to defendants on their counterclaim. Plaintiffs appeal from the judgment granting relief under that counterclaim. We affirm.

■ The property which is the subject matter of this controversy was originally owned by Thomas Jones. Upon his death in 1933, and the subsequent death in 1936 of his wife, their six children took title to the property as tenants in common.[1] One of Jones' sons, Hardie (plaintiff here), entered into possession of the property at that time. The record shows that he has been in continuous possession of the property since that time. At various times he has farmed, pastured, and collected rents on the land. In the judgment which granted relief under the counterclaim the trial court made the following finding:

"It is the opinion of the Court that the Plaintiffs have failed to carry the burden of proving title to the entirety by virtue of adverse possession. In fact, the Court is of the opinion that Plaintiff's (sic) possession of the property in dispute has been with the express permission of the Defendants and their predecessor in title, and that Plaintiffs have failed to show an 'ouster' of the other cotenants. * * *"

The issues presented for review by the eleven assignments of error: (1) Is the judgment contrary to the weight of the evidence? (2) Did the trial court err in failing to consider the question of laches as a bar to counterclaimants' assertion of title?

In *Jenks v. Jenks,* 292 Ala. 328, 334, 294 So.2d 147, 152 (1974), this court quoting from earlier cases said:

" '. . . The possession of one tenant in common is prima facie presumed to be the possession of all, and it does not become adverse to the cotenants unless they are actually ousted, or, short of this, unless the adverse character of

---

1. While not clear from the record, Thomas Jones apparently died intestate. Thus his property, subject to widow's dower rights, descended to his children as tenants in common. Code of Ala., Tit. 16, §§ 1, 9.

the possession of one is actually known to the others, or the possession of the one is so open and notorious in its hostility and exclusiveness as to put the other tenants on notice of its adverse character. . (citation omitted)

" 'The mere fact that a cotenant in possession has taken all the rents and profits does not show ouster of his companions. (citation omitted)

" 'Mere lapse of time and payment of taxes by one cotenant are not, in tenancies in common, necessarily acts of disseisin. There must be an entry and continuous exclusive possession under a claim of exclusive right. Possession and use by one tenant in common will not, of itself, repel the presumption that the possession is that of all the tenants in common. The intent to hold as exclusive owner, repudiating the rights of cotenants, must be established by proof and brought home to them. . . . .' (citation omitted)"

■ The trial court's findings on evidence adduced ore tenus is cloaked with a presumption of validity and will be disturbed only when manifestly erroneous. *Almon v. Champion International Corp.*, 293 Ala. 727, 310 So.2d 207 (1975).

■ Under the rules as stated in *Jenks* we cannot say that the findings were erroneous. The evidence indicates that on two occasions Hardie Jones attempted to obtain the signatures of other cotenants on a deed conveying the property to him. This is indicative of a recognition of their rights. The tax assessments and tax receipts show that while Hardie Jones paid those taxes,[2] the property was assessed as the "Thomas Jones Estate." Further, we find evidence in the record from which the trial judge could properly conclude that Hardie Jones' continued possession and use of the property and collection of rents was by permission of his cotenants. The evidence is ample to support the findings contained in the judgment of the trial court as well as the judgment itself. It is clear that the adverse claim of Hardie Jones was never brought home to the other cotenants. *Jenks*, supra.

The rights and remedies of counterclaimants are not barred by laches in this case.

" 'Where the question of laches is presented, the facts and circumstances of each case govern the court in the exercise of the discretion thereby invoked for the determination of the inquiry. (citation omitted)" *Jenks*, supra, p. 333, 294 So.2d p. 151, again quoting from an earlier case.

■ The judgment of the court does not, on its face, indicate consideration of the laches question. However, granting relief under the counterclaim necessarily resolved the question of laches adversely to plaintiffs.

" 'It has often been declared that mere delay which has resulted in no disadvantage to another or that has not operated to bring about changes in conditions or circumstances, in consequence of which "there can be no longer a safe determination of the controversy," will not serve to bar complainant's right or remedy. (citations omitted)' " *Jenks*, supra, p. 333, 294 So.2d p. 151; *Monte v. Montalbano*, 274 Ala. 6, 145 So.2d 197 (1962).

■ The evidence in the record does not show a change in circumstances in this case which would bar the relief requested by counterclaimants.

Affirmed.

HEFLIN, C. J., and MERRILL, BLOODWORTH, MADDOX, FAULKNER, JONES, ALMON and SHORES, JJ., concur.

2. Following the death of Thomas Jones in 1933, the taxes were paid by Ernest Jones until 1947, at which time Hardie Jones began paying the taxes.